**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Marc BROOKS, Appellant.**

Superior Court of Pennsylvania.

Argued May 19, 2010.

Filed Oct. 7, 2010.

Reargument Denied Dec. 8, 2010.

---

John E. Kusturiss, Jr., Media, for appellant.

Jay W. Hannon, Asst. Dist. Atty., for Com., appellee.

BEFORE: ALLEN, LAZARUS, and FREEDBERG,* JJ.

OPINION BY ALLEN, J.:

Marc Brooks ("Appellant") appeals from the judgment of sentence imposed after a jury convicted him of two counts of endangering the welfare of two minor victims, as well as multiple sexual offenses involving one of the minor victims. We affirm.

The trial court ably summarized the pertinent facts and procedural history as follows:

[Appellant] is the biological father of C.B. and was the longtime boyfriend of G.W.'s now deceased mother, Sherry Walls. Until 2001, the four of them— C.B., G.W., Sherry Walls, and [Appellant]—lived together. The children testified that while they lived with [Appellant], they watched him physically abuse their mother. They also testified that during the warm months of that year, when their mother was absent from the apartment, [Appellant] would sexually abuse them. C.B. testified that [Appellant] forced him to perform oral sex on him and that [Appellant] sodomized him. C.B. testified that [Appellant] forced him to perform oral sex "a lot ... [like] once a day," and that anal sex occurred just as frequently.

Like her half-brother, G.W. testified that [Appellant] forced her to perform oral sex on him. She testified that these incidents occurred more then ten times. Both children testified that [Appellant] threatened to beat or kill them or their mother if they refused to perform the sex acts on him or if they told anyone what they were doing.

Later in 2001, C.B. and G.W. ceased living with [Appellant] and their biological mother. C.B. entered into foster care through Children and Youth Services (CYS) and G.W. went to live with Joyce Broomall. However, [Appellant's] visitation rights in regard to C.B. were not suspended until December 2004 and Lydia Debiase, a CYS case worker [sic], was able to observe three or four of these visits. She testified that during these visits C.B. would sit close to [Appellant] and "try to be very attentive to his father to make sure that [Appellant] stayed calm."

However, it wasn't until 2006 that either child disclosed the alleged sex acts [Appellant] committed on them. In July of that year, C.B. told Elizabeth McKernan, his trauma counselor, that he had been sexually abused. Over the course of their meetings, C.B. informed Ms. McKernan that his father had beaten him, sodomized him and forced him to perform oral sex. Ms. McKernan also testified that while he made these disclosures C.B. "would be making no eye contact, looking down, fidgety" and that "one time he ... curled up into the fetal position after making a disclosure." Ms. McKernan reported these allegations of sexual abuse.

During the summer of 2006, Ms. Debiase informed Joyce Brooomall, G.W.'s adoptive mother, that C.B. was making allegations; however, Ms. Broomall testified that Ms. Debiase did not reveal any specifics about the allegations. About a month after Ms. Debiase contacted her, Ms. Broomall initiated a conversation with G.W. about the changes G.W.'s body was about to undergo. G.W. then started crying hysterically and told Ms. Broomall that [Appellant] forced her to perform oral sex on him.

---

* Retired Senior Judge assigned to Superior Court.

Upon hearing this disclosure, Ms. Broomall contacted Ms. Debiase, who she believes then contacted Maria Phillapella, an agent of [CYS's] Sexual Abuse Unit. Ms. Phillapella, in turn, informed Officer Kuryan of the Chester Police Department that she had received information about sexual abuse allegations made by C.B. and G.W. While investigating the allegations, Officer Kuryan interviewed both G.W. and C.B. and obtained recorded statements from each of them relaying the allegations of sexual abuse set forth above (except for C.B.'s allegation of sodomy).

At trial, C.B. and G.W. testified via video about the alleged abuse [Appellant] subjected them to. Ms. McKernan, Ms. Broomall, and Officer Kuryan testified in open court about the disclosures C.B. and G.W. had made to them regarding the alleged abuse.

Trial Court Opinion, 12/29/09, at 2–4 (citations omitted).

Although the jury acquitted Appellant of all sexual offenses claimed by C.B., it convicted him of the multiple sexual offenses he committed against G.W. and convicted him of endangering the welfare of each child. The trial court subsequently sentenced him to an aggregate term of twenty-two and one-half to forty-five years of imprisonment. In addition, the trial court later determined that Appellant was a sexually violent predator under Megan's Law.[1] This appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925(a).

Appellant raises the following issues on appeal:

1. Whether the evidence was sufficient to establish beyond a reasonable doubt that Appellant was guilty of [Involuntary Deviate Sexual Intercourse ("IDSI")], Sexual Assault, Indecent Assault and Endangering the Welfare of Children, in that the Commonwealth failed to indentify Marc Brooks as the Defendant?

2. Whether the evidence was sufficient to establish beyond a reasonable doubt that Appellant was guilty of IDSI, Sexual Assault, Indecent Assault, and Endangering the Welfare of Children, in that the Commonwealth failed to prove the commission of the crime on any date fixed with reasonable certainty and within the prescribed statutory period; let alone the time frame set forth in the Criminal Informations?

3. Whether the Commonwealth met its burden to prove by clear and convincing evidence that a person is a sexually violent predator when most of the Megan's Law statute's criteria have not been met and when the person is not a repeat sex offender?

Appellant's Brief at 5.

In his first two claims, Appellant presents separate challenges to the sufficiency of the evidence supporting his convictions. Our standard of review is well settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's

---

1. 42 Pa.C.S.A. §§ 9791–9799.9.

guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones*, 886 A.2d 689, 704 (Pa.Super.2005), *appeal denied*, 587 Pa. 686, 897 A.2d 452 (2006) (citations omitted).

██ In addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes. Appellant first claims that the Commonwealth failed to do so in this case, thereby causing the jury to resort to speculation to arrive at the guilty verdicts.

██ The trial court rejected Appellant's claim as follows:

In the instant case, the prosecution's evidence, when viewed most favorably, was sufficient to identify [Appellant] as the perpetrator of the charged crimes. C.B. testified that his dad's name was Marc Brooks and that his dad made him do "sexual stuff." Elizabeth McKernan testified that C.B. told her that his father had beaten him. G.W. testified that she used to live with Marc Brooks and that she "was made to give Marc oral sex." Lydia Debiase identified [Appellant] in court as Marc Brooks, the biological father of C.B. Ms. Debiase's

in court identification of [Appellant] as Marc Brooks in conjunction with the other testimony identifying Marc Brooks as the perpetrator· of the crimes was sufficient to identify [Appellant] as the individual responsible for the crimes.

Trial Court Opinion, 12/29/09, at 6 (citations omitted). Our review of the record supports the trial court's conclusions. Because the victims testified via closed-circuit television, in-court identification of Appellant was impossible. Nevertheless, as found by the trial court, the victims' testimony, coupled with Ms. Debiase's in-court identification, was sufficient to establish that Appellant was the perpetrator of the sexual abuse. Appellant cites no authority in his reply brief to support his assertion that we must ignore C.B.'s entire testimony because the jury acquitted Appellant of all sexual offenses he was charged with regarding C.B. The reasons for the jury's verdict are unknown, and Appellant's speculation that C.B. was found not to be credible is mere speculation. *See Jones, supra* (explaining that when deciding the credibility of a witness and the weight of the evidence produced, the jury as fact finder is free to believe all, part or none of the evidence).

██ Appellant next claims that the evidence was insufficient to sustain his convictions because "the Commonwealth failed to present any evidence tending to prove the commission of the crime on any date fixed with reasonable certainty, within the statutory period, let alone that the alleged crimes were committed between May–August of 2001 as charged in the criminal informations." Appellant's Brief at 11.

██ As this Court has summarized:

It is the duty of the prosecution to "fix the date when an alleged offense occurred with reasonable certainty...." *Commonwealth v. Jette*, 818 A.2d 533,

535 (Pa.Super.2003) (citation omitted). The purpose of so advising a defendant of the date when an offense is alleged to have been committed is to provide him with sufficient notice to meet the charges and prepare a defense. *Commonwealth v. Gibbons*, 567 Pa. 24, 784 A.2d 776 (2001).

However, "[d]u[e] process is not reducible to a mathematical formula," and the Commonwealth does not always need to prove a specific date of an alleged crime. *Commonwealth v. Devlin*, 460 Pa. 508, 515–516, 333 A.2d 888, 892 (1975). Additionally, "indictments must be read in a common sense manner and are not to be construed in an overly technical sense." *Commonwealth v. Einhorn*, 911 A.2d 960, 978 (Pa.Super.2006) (quoting *Commonwealth v. Ohle*, 503 Pa. 566, 588, 470 A.2d 61, 73 (1983)). Permissible leeway regarding the date provided varies with, *inter alia*, the nature of the crime and the rights of the accused. [*Einhorn*, 911 A.2d at 978]. *See* Pa.R.Crim.P. 560(B)(3), stating that it shall be sufficient for the Commonwealth to provide in the information, if the precise date of an offense is not known, an allegation that the offense was committed on or about any date within the period fixed by the statute of limitations.

*Commonwealth v. Koehler*, 914 A.2d 427, 436 (Pa.Super.2006). Case law has further "established that the Commonwealth must be afforded broad latitude when attempting to fix the date of offenses which involve a continuous course of criminal conduct." *Commonwealth v. G.D.M., Sr.*, 926 A.2d 984, 990 (Pa.Super.2007) (quoting *Commonwealth v. Groff*, 378 Pa.Super. 353, 548 A.2d 1237, 1242 (1988)). This is especially true when the case involves sexual offenses against a child victim. *Id.*

Citing *Devlin, supra*, Appellant contends that the Commonwealth failed to establish the date any of the sexual offenses occurred with "reasonable certainty." According to Appellant, the Commonwealth's "failure to prove the alleged crimes occurred on any single day within the four month period set forth in the criminal informations, let alone any date within the statute, does not provide the court with sufficient particularity to uphold the conviction." Appellant's Brief at 17. We disagree.

The trial court rejected Appellant's claim:

[T]he Commonwealth is not "required to prove the single specific date of a crime in every instance, instead, any leeway would vary with the nature of the crime and the age and condition of the victim balanced against the rights of the accused." *Commonwealth v. McClucas*, 357 Pa.Super. 449, 455, 516 A.2d 68, 70–71 (1986) (internal quotations omitted). In the instant case, this balance weighs heavily in favor of the victims. Time is not essential to the crimes [Appellant] was charged with. *See Commonwealth v. Niemetz*, 282 Pa.Super. 431, 438 422 A.2d 1369, 1373 (1980) (holding that time was not "of the essence" where defendant was charged and convicted of rape, involuntary deviate sexual intercourse, indecent assault and corruption of minors); [*McClucas*, 516 A.2d at 70 (applying *Niemetz* where defendant was convicted of rape, statutory rape, incest, simple assault, corruption of minors, and endangering the welfare of children). The alleged victims were of such a young age [when the abuse occurred] that it is unlikely that they would be able to provide a specific timeframe during which the alleged offenses occurred. *Cf. Commonwealth v. Bethlehem*, 391 Pa.Super. 162, 570 A.2d 563 (holding that "a broader, less definite timeframe"

may be alleged in a criminal complaint when the allegations related to the sexual abuse of a child). Finally, since the crimes allegedly occurred over a continuous period, [*s*]*ee, e.g.*, N.T., 9/17/2008 at 89, [Appellant's] ability to defend himself was less seriously encroached upon than it might have been otherwise. *See McClucas*, 357 Pa.Super. at 455, 516 A.2d at 71 (1986); *Commonwealth v. Yon*, 235 Pa.Super. 232, 236, 341 A.2d 169, 171 (1975). Thus, given the above factors, the Commonwealth was permitted leeway in proving when the alleged crimes were committed.

However, even if the balance did not weigh in favor of [Appellant] so as to render it necessary for the Commonwealth to prove that the alleged crimes occurred between May 2001 and August 2001, the Commonwealth did provide evidence sufficient to prove the crimes occurred within this time frame. C.B. testified that the alleged crimes occurred "every day" and G.W. testified that [Appellant] abused her when it was warm outside and she was wearing shorts. N.T., 9/17/2008 at 89, 116. Viewing the evidence in the light most favorable to the Commonwealth, this testimony alone is sufficient to prove beyond a reasonable doubt that the alleged crimes occurred between May and August of 2001.

Trial Court Opinion, 12/29/09, at 6–7 (footnote omitted).

Our review of the record supports the trial court's conclusions. When "the precise date of [an offense] is not known or if the offense is a continuing one," Rule 560(B)(3) of the Pennsylvania Rules of Criminal Procedure provides that a criminal information "signed by the attorney for the Commonwealth shall be valid and sufficient in law if it contains . . . an allegation that it was committed on or about any date

fixed within the statute of limitations[.]" Appellant was charged with committing the sex offenses against the victims during the summer months of 2001, and G.W. testified that she recalled the abuse occurring when it was warm outside and she was wearing shorts when the sexual abuse occurred.

In his reply brief, Appellant argues that even though subsequent cases have "refined" *Devlin*, the cases of *G.D.M., Sr., supra*, and *Groff, supra*, "are directly in-line [sic] with the standard set forth in *Devlin*." Appellant's Reply Brief at 3. He then asserts that, unlike the testimony of the victims in the present case, the victims in both *G.D.M., Sr.* and *Groff*, identified specific incidents during a prolonged period of abuse, or their testimony was corroborated by other witnesses. Although Appellant correctly discusses the facts of those cases, neither holds that due process requires a victim of sexual abuse to provide temporal testimony of specific incidents that occurred during a prolonged period of abuse. As noted in *Devlin*, "[t]he pattern of due process is picked out in the facts and circumstances of each case." *Devlin*, 333 A.2d at 892 (citation omitted). The victims' relationship to Appellant and Appellant's threats of violence made it more difficult for the victims to testify to a particular date the abuse occurred, especially when both testified that the abuse was continuous. *See Niemetz*, 422 A.2d at 1373 (affirming convictions for offenses defendant committed against stepdaughter over a five-year period; "we do not believe that it would serve the ends of justice to permit a person to rape and otherwise sexually abuse his child with impunity simply because the child has failed to record in a daily diary the unfortunate details of her childhood"); *see also Commonwealth v. McClucas*, 516 A.2d at 71 (concluding that victim's repeated sexual abuse by father over a five year period

was "not susceptible to being dated within a 'reasonable degree of certainty' ").

Finally, in *Devlin, supra,* "our Supreme Court opted for a balancing approach to resolve conflicting interests of the accused vis-à-vis the victim when it came to the specificity required to be proven as to the time-frame of the alleged crime." *Commonwealth v. Fanelli,* 377 Pa.Super. 555, 547 A.2d 1201, 1204 (1988) (*en banc*). Appellant has never asserted how the lack of specificity in the information or victims' testimony rendered him unable to prepare a defense to the charges brought against him. Considering the victims' testimony in this case, vis-à-vis Appellant's general assertion of a due process violation, our review of the record and applicable law supports the trial court's conclusion that the victims' testimony was sufficient to support the informations filed by the Commonwealth such that, if any due process violation in fact occurred, it must yield to the rights of the victims. *See McClucas,* 516 A.2d at 71 (explaining that, because the sexual offenses occurred over a period of time, "we are not prepared to say that the lack of chronological specificity seriously encroached upon appellant's ability to defend himself").

Thus, for all of the above reasons, Appellant's second challenge to the sufficiency of the evidence supporting his convictions is without merit.

In his final claim on appeal, Appellant asserts that the trial court erred and/or abused its discretion in concluding that the Commonwealth met its burden of proving by clear and convincing evidence that Appellant was a sexually violent predator. Since Appellant's issue concerns sufficiency of the evidence, we note that any claim that the trial court relied upon insufficient evidence when designating a defendant as an SVP is reviewed under the following standard:

A challenge to the sufficiency of the evidence is a question of law requiring a plenary scope of review. The appropriate standard of review regarding the sufficiency of the evidence is whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all the elements of the offenses. As a reviewing court, we may not weigh the evidence and substitute our judgment for that of the fact-finder. Furthermore, a fact-finder is free to believe all, part or none of the evidence presented.

At the hearing prior to sentencing the court shall determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a sexually violent predator. Accordingly, in reviewing the sufficiency of the evidence regarding the determination of SVP status, we will reverse the trial court only if the Commonwealth has not presented clear and convincing evidence sufficient to enable the trial court to determine that each element required by the statute has been satisfied.

*Commonwealth v. Haughwout,* 837 A.2d 480, 484 (Pa.Super.2003) (citations omitted).

A sexually violent predator is defined as a "person who has been convicted of a sexually violent offense as set forth in section 9795.1 (relating to registration) and who is determined to be a sexually violent predator under section 9795.4 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses." *Commonwealth v. Krouse,* 799 A.2d 835, 838 (Pa.Super.2002) (*en banc*), *appeal denied,* 573 Pa. 671, 821 A.2d 586 (2003) (quoting 42 Pa.C.S.A. § 9792) (emphasis omitted), *disapproved*

*on other grounds, Commonwealth v. Meals,* 590 Pa. 110, 912 A.2d 213 (2006). "Mental abnormality" is a "congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." 42 Pa.C.S.A. § 9792.

> The statute specifically details the process by which an individual is determined to be an SVP. After a defendant is convicted of an offense specified in Section 9795.1, such as indecent assault [and aggravated indecent assault in the instant case], the trial court must order the [State Sexual Offenders] Assessment Board to assess the defendant for the appropriateness of an SVP classification. *See* 42 Pa.C.S. § 9795.4(a). The administrative officer of the Assessment Board then assigns one of its members to conduct the assessment pursuant to Section 9795.4(b).

*Haughwout,* 837 A.2d at 484–85.

Section 9795.4(b) specifies that the assessment must include, but is not limited to, an examination of the following factors:

> (1) Facts of the current offense, including:
>
> (i) Whether the offense involved multiple victims.
>
> (ii) Whether the individual exceeded the means necessary to achieve the offense.
>
> (iii) The nature of the sexual contact with the victim.
>
> (iv) Relationship of the individual to the victim.
>
> (v) Age of the victim.
>
> (vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.
>
> (vii) The mental capacity of the victim.
>
> (2) Prior offense history, including:

> (i) The individual's prior criminal record.
>
> (ii) Whether the individual completed any prior sentences.
>
> (iii) Whether the individual participated in available programs for sexual offenders.
>
> (3) Characteristics of the individual, including:
>
> (i) Age of the individual.
>
> (ii) Use of illegal drugs by the individual.
>
> (iii) Any mental illness, mental disability or mental abnormality.
>
> (iv) Behavioral characteristics that contribute to the individual's conduct.
>
> (4) Factors that are supported in a sexual offender assessment filed as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9795.4(b).

Following the submission of a written report containing the assessment and a praecipe filed by the district attorney, the trial court must hold a hearing. 42 Pa.C.S.A. § 9795.4(e). During the hearing on the SVP classification, the following procedural protections apply:

> The individual and district attorney shall be given notice of the hearing and an opportunity to be heard, the right to call witnesses, the right to call expert witnesses and the right to cross-examine witnesses. In addition, the individual shall have the right to counsel and to have a lawyer appointed to represent him if he cannot afford one. If the individual requests another expert assessment, the individual shall provide a copy of the expert assessment to the district attorney prior to the hearing.

42 Pa.C.S.A. § 9795.4(e)(2).

■ At the April 23, 2009 hearing in the present case, Dr. Thomas Haworth, a

licensed psychologist and member of the Pennsylvania Sexual Offender Assessment Board, assessed Appellant, authored a report, and testified for the Commonwealth. Appellant refused to cooperate with the assessment process. Upon reviewing the statutory factors enumerated above, Dr. Haworth opined that Appellant was a sexually violent predator. According to Dr. Haworth, Appellant suffered from Personality Disorder Not Otherwise Specified, and that this disorder predisposed him to the commission of sexual offenses. In addition, Dr. Haworth found that Appellant's relationship to his victims facilitated the pattern of abuse and therefore met the legal definition of "predatory." SVP Report, 12/16/08, at 11. Appellant presented the testimony of his own expert, Dr. Timothy P. Foley, who did not agree with Dr. Haworth's conclusions.

Presented with this conflicting testimony, the trial court concluded that Appellant was a sexually violent predator:

At the hearing, the Commonwealth's expert, Dr. Thomas Haworth, testified that [Appellant's] past acts of unusual cruelty, previous violent crimes, history of substance abuse, prior allegations regarding a male victim conjoined with [Appellant's] personality disorder not otherwise specified (NOS)[,] rendered [Appellant] a sexually violent predator. N.T., 4/23/2009, at 28–29, 33. [Appellant's] expert, Dr. Timothy Foley, testified that he would classify [Appellant] with personality disorder NOS but that he did not believe that such a disorder met the statutory definition of mental abnormality and therefore did not deem [Appellant] to be a sexually violent predator. N.T., 4/23/2009, at 126–[2]7. Thus, the primary point of contention between the two experts was whether personality disorder NOS qualified as a "mental abnormality or personality disorder that makes the person likely to

engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9792.

Dr. Haworth's evaluation of [Appellant] is very similar to that found in *Commonwealth v. Askew,* [907 A.2d 624 (Pa.Super.2006)]. In *Askew,* the defendant was classified a sexually violent predator on the grounds that the Commonwealth's expert testified that the defendant suffered from a personality disorder NOS with antisocial and pedophilic features. In this case, Dr. Haworth testified [Appellant] presented "a pattern of behavior antisocial in nature." N.T., 4/23/2009, at 31–32 (Dr. Haworth only resisted diagnosing [Appellant] with full antisocial personality disorder because of the lack of history from his juvenile years). Additionally, [Appellant] was convicted of sexually abusing a six-year-old girl and accused of [ ] sexually abusing a four-year-old boy. Thus, though Dr. Haworth did not explicitly diagnose [Appellant] with "personality disorder NOS with antisocial and pedophilic features," his diagnosis was identical in principal to the diagnosis in *Askew.*

Trial Court Opinion, 12/23/09, at 15–16.

Within his brief, Appellant asserts that the trial court erred in classifying him as a sexually violent predator because he "did not meet the majority" of the statutory criteria, "especially when compared to other cases that consider this issue." Appellant's Brief at 12. According to Appellant, "[b]ecause these other factors were not present in [his] case, it appears as though [he] was branded a sexually violent predator solely because he was convicted of a sexual offense." Appellant's Brief at 12. We disagree.

 Our thorough review of the evidentiary hearing transcript supports the trial court's classification of Appellant as a

sexually violent predator. As this Court has recently summarized:

[W]ith regard to the various assessment factors listed in Section 9795.4, there is no statutory requirement that all of them or any particular number of them be present or absent in order to support an SVP designation. The factors are not a check list with each one weighing in some necessary fashion for or against SVP designation. Rather, the presence or absence of one or more factors might simply suggest the presence or absence of one or more particular types of mental abnormalities.

Thus, while the Board is to examine all the factors listed under Section 97954.4, the Commonwealth does not have to show that any certain factor is present or absent in a particular case. Rather, the question for the SVP court is whether the Commonwealth's evidence, including the Board's assessment, shows that the person convicted of a sexually violent offense has a mental abnormality or disorder making that person likely to engage in predatory sexually violent offenses. 42 Pa.C.S.A. § 9792. Having conducted a hearing and considered the evidence presented to it, the court then decides whether a defendant is to be designated an SVP and thus made subject to the registration requirements of 42 Pa.C.S.A. § 9795.1(b)(3).

*Commonwealth v. Feucht,* 955 A.2d 377, 381 (Pa.Super.2008) (citations omitted). In discussing the absence of certain statutory factors and discussing the facts of other cases, Appellant is essentially asking this Court to reweigh them. This we cannot do. *See generally, Commonwealth v. Meals,* 590 Pa. 110, 912 A.2d 213 (2006) (holding that this Court erred in reweighing the SVP evidence presented to the

trial court; "the Superior Court stepped beyond its authority when it reweighed the evidence, giving more weight to the 'absent' factors than those found and relied upon by the trial court").

Thus, because Appellant's convictions are amply supported by sufficient evidence, and the record supports Appellant's classification as a sexually violent predator, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judge LAZARUS files a Dissenting Opinion.

## DISSENTING OPINION BY LAZARUS, J.:

Because the Commonwealth failed to establish when the offenses against G.W. occurred with any particularity, defendant's fundamental due process rights were violated and, therefore, I respectfully dissent.

This case stems from Brooks' alleged abuse of C.B. and G.W. Brooks is the biological father of C.B. and formerly the boyfriend of G.W.'s deceased mother Sherry Walls.[1] At the time of trial, C.B. was a 12–year–old male and G.W. was a 14–year–old female. C.B. and G.W. each testified via closed-circuit television that Brooks abused them inside an apartment they shared with Brooks and Walls. C.B. testified that Brooks forced him to perform oral sex and that Brooks sodomized him. G.W. testified that Brooks forced her to perform oral sex on him. Both testified Brooks threatened them with physical abuse if they did not comply.

The jury convicted Brooks with regards to his actions against G.W., of two counts of involuntary deviate sexual intercourse

---

1. Walls died unrelated to any actions by Brooks.

("IDSI") by forcible compulsion, two counts of IDSI by threat of forcible compulsion, two counts of IDSI of a child, two counts of sexual assault, two counts of indecent assault lack of consent, two counts of indecent assault by forcible compulsion, two counts of indecent assault of a child, and one count of indecent assault by threat of forcible compulsion.[2]

The jury acquitted Brooks of the same charges as they related to his alleged sexual misconduct toward C.B. The jury, however, convicted Brooks of two counts of endangering the welfare of a child ("EWOC"), arising from his conduct toward C.B. and G.W.[3] The trial court sentenced Brooks to an aggregate term of twenty-two and one-half to forty-five years' imprisonment.

Brooks argues that the evidence was insufficient to sustain his convictions because the Commonwealth did not establish the dates of the offenses with sufficient certainty.[4] He relies on *Commonwealth v. Devlin*, 460 Pa. 508, 333 A.2d 888 (1975), for the principle that fundamental due process requires the Commonwealth prove the commission of the offenses charged upon a date fixed with reasonable certainty. *Devlin*, 333 A.2d at 889. A *Devlin* claim is a form of motion in arrest of judgment. *Commonwealth v. Fanelli*, 377 Pa.Super. 555, 547 A.2d 1201, 1203 (1988) (*en banc*). If the claim is meritorious, the proper remedy is to vacate the judgment of sentence and discharge the defendant. *Commonwealth v. Thek*, 376 Pa.Super. 390, 546 A.2d 83, 90 (1988).

In passing upon a motion in arrest of judgment, all of the testimony which has been admitted into evidence must be evaluated. This evidence is viewed in the light most favorable to the Commonwealth and the Commonwealth is entitled to the benefit of all favorable inferences which may be drawn from the evidence.

*Commonwealth v. Groff*, 378 Pa.Super. 353, 548 A.2d 1237, 1242 (1988) citing *Commonwealth v. Meadows*, 471 Pa. 201, 369 A.2d 1266 (1977).

In *Devlin*, the defendant was accused of sodomizing a mentally retarded adult. *Id.* at 889. The Commonwealth's proof at trial provided only that the crime occurred at some unspecified time during the fourteen-month period from February, 1971 to April, 1972. *Id.* Defendant argued that because the Commonwealth's allegation as to the time of the offense was so vague, he was precluded from preparing a defense to the charges against him. The Pennsylvania Supreme Court agreed and held that the defendant's trial had been so fundamentally unfair as to be inconsistent with due process.[5] The Court, however, declined to adopt a bright-line rule concerning the length of the time period in which the Commonwealth must establish the crime occurred. Instead, the Court emphasized that a case-by-case inquiry is appropriate.

---

2. 18 Pa.C.S.A. § 3123(a)(1), 18 Pa.C.S.A. § 3123(a)(2), 18 Pa.C.S.A. § 3123(b), 18 Pa.C.S.A. § 3124.1, 18 Pa.C.S.A. § 3126(a)(1), 18 Pa.C.S.A. § 3126(a)(2), 18 Pa.C.S.A. § 3126(a)(7), and 18 Pa.C.S.A. § 3126(a)(3), respectively.

3. 18 Pa.C.S.A. § 4304(a)(1).

4. Because of my disposition on this issue I do not address the other issues raised.

5. The *Devlin* Court based its holding on both the due process clause of the Fourteenth Amendment and on the state constitution, which provides that no one can be "deprived of life, liberty, or property, unless by the judgment of his peers or by the law of the land." Pa. Const. art. I § 9. *Devlin*, 333 A.2d at 891.

The pattern of due process is picked out in the facts and circumstances of each case. Due process is not reducible to a mathematical formula. Therefore, we cannot enunciate the exact degree of specificity in the proof of the date of a crime which will be required or the amount of latitude which will be acceptable. Certainly, the Commonwealth need not always prove a single specific date of the crime. Any leeway permissible would vary with the nature of the crime and the age and condition of the victim, balanced against the rights of the accused.

*Devlin*, 333 A.2d at 892 (citations and quotations omitted).

In *Commonwealth v. Jette*, 818 A.2d 533 (Pa.Super.2003), the victim testified that appellant sexually abused him on a continual basis for a period of approximately two years beginning when he was eight-years-old. *Id.* at 535. In determining that the evidence was sufficient, this Court cited the trial court's finding that the victim ably "described four of the worst incidents, describing generally when they occurred by month and generally what time of the year." *Id.*

Likewise, in *Commonwealth v. G.D.M., Sr.*, 926 A.2d 984 (Pa.Super.2007) ("*G.D.M.*"), this Court addressed a similar issue in a case involving ongoing, repeated sexual abuse of a six-year-old victim from September 1997 through March 1998. *Id.* at 990. In *G.D.M.* the victim was able to identify three different occasions on which his father abused him during the seven-month period of abuse. The victim remembered the month and year the abuse began because it correlated with his entry into kindergarten. The victim also recalled the month and year the abuse ended because it correlated with his father's arrest. On appeal, appellant claimed the evidence was insufficient to sustain his convictions because the Commonwealth failed to establish the approximate dates on which the offense occurred. *G.D.M.*, 926 A.2d at 989. This Court concluded that:

> [u]nder these circumstances, we find that the due process concerns of *Devlin* are satisfied where the victim, as here, *can at least fix the times when an ongoing course of molestation commenced and when it ceased.*

*Id.* at 990 (emphasis added).

In the case *sub judice*, we are presented with a similar situation involving offenses the Commonwealth alleges occurred continuously from May through August of 2001. I am constrained to conclude that the Commonwealth has failed to establish when the offenses occurred with sufficient particularity to withstand Brooks' due process challenge, because the victims could neither fix the times the ongoing abuse commenced nor when it ceased. *G.D.M.*, *supra*. While the Commonwealth is not required to prove the crimes alleged occurred on the exact date set forth in the criminal information, *Commonwealth v. Morrison*, 180 Pa.Super. 121, 118 A.2d 258 (1955), and the Commonwealth has "broad latitude when attempting to fix the date of offenses which involve a continuous course of criminal conduct," *Commonwealth v. Groff*, 378 Pa.Super. 353, 548 A.2d 1237 (1988); *see also Commonwealth v. Niemetz*, 282 Pa.Super. 431, 422 A.2d 1369 (1980); *Commonwealth v. Yon*, 235 Pa.Super. 232, 341 A.2d 169 (1975), the Commonwealth is not relieved entirely from establishing *some* defined time frame of when the crimes charged occurred. *Devlin*, *supra*. This is so even where the offenses charged involve a continuous course of criminal conduct. To do so would ignore the due process requirement that the Commonwealth prove the commission of the offenses charged upon a date

fixed with reasonable certainty. *Devlin, supra.*

In this case, the Commonwealth presented the following evidence at trial. C.B. testified Brooks abused him when he lived with Brooks, Sherry Walls, and G.W. C.B. testified that the last time he lived with Brooks was "in the year 2001." N.T. Trial, 9/17/08, at 79. He added that he was 4 years of age when he *last* lived with Brooks. Notably, C.B. was 4 years of age in the year 2000.

G.W. also testified that Brooks abused her when she lived with Brooks, Sherry Walls, and C.B. G.W. testified she was between the ages of 5 and 6 ½ when she *last* lived with Brooks. The *only* testimony G.W. was able to provide about the timing of the alleged abuse was that the abuse occurred when it was light outside, and when the temperature was warm, which she remembers because she was wearing shorts. N.T. Trial, 9/17/08, at 116. Therefore, the abuse could have occurred at any time between April and October of any given year. Here, G.W. could not even specify whether she was in school, or identify the season of the year the abuse allegedly occurred.

In *Jette,* the victim testified that the abuse occurred over a two-year period beginning when the victim was eight-years-old. The victim described four of the worst incidents of abuse and identified what month and generally what time of the year the abuse occurred. In *G.D.M.,* the victim specified a seven-month period of abuse, fixed in time by both month and year. This Court held that the due process concerns of *Devlin* were satisfied where the victim was able to "at least" establish when the abuse began and when the abuse ended. *G.D.M.,* 926 A.2d at 990.

Here, neither C.B. nor G.W. testified to the month or year the abuse occurred. Neither testified the abuse occurred in the spring, summer, fall or winter. Neither testified to when the abuse commenced or when it ceased. Each testified only that the abuse occurred when they lived with Brooks. Such testimony might have adequately fixed the time frame in which the alleged abuse occurred had the Commonwealth specifically established when C.B. and G.W. lived with Brooks. This, the Commonwealth, however, was unable to do.

G.W. testified she was between 5 and 6 ½ years of age when she last lived with Brooks. According to that testimony, she last lived with Brooks sometime between the years 1999 and 2000. Appellant's Brief, at 17. G.W.'s adoptive mother, Joyce Broomall, testified that G.W. lived with her on a permanent basis beginning in December of 2001. N.T. Trial, 9/17/08, at 130. Though this testimony appears to establish when G.W. *ceased living* with Brooks, it doesn't establish when the abuse occurred.[6] G.W. also testified that Brooks abused her when the temperature was warm. This testimony when viewed with Broomall's testimony, even in the light most favorable to the Commonwealth as verdict winner, fails to establish with reasonable certainty a month or year when the abuse occurred. The abuse could have occurred when the temperature was warm in any year before 2001.

Likewise, C.B.'s testimony (if at all credible, since the jury acquitted Brooks of all charges but EWOC applicable to C.B.) fails to narrow the time frame in which the alleged abuse occurred to any specific month or year. C.B. testified he last lived with Brooks sometime in the year 2001 and the Commonwealth could only confirm that C.B. entered foster care sometime in

---

6. Note that G.W. never testified that the abuse ended when she stopped living with Brooks.

2001. N.T. Trial, 9/18/08, at 121. Moreover, although C.B. testified he was 4 years of age the last time he lived with Brooks, he would have been 4 years of age in 2000 and five years of age in 2001. Appellant's Brief, at 16. This evidence, as a matter of due process, fails to afford the defendant a reasonable time frame from which to frame his defense.

Given the lack of evidence presented by the Commonwealth at trial, the trial court's conclusion that the Commonwealth presented sufficient evidence to prove the abuse occurred between May 2001 and August 2001 is unsupportable. The trial court relies solely on C.B.'s testimony that "the alleged crimes occurred every day" and G.W.'s testimony that "the Defendant abused her when it was warm outside and she was wearing shorts." Trial Court Opinion, 12/29/09, at 7. This testimony, however, on its face fails to fix any month, series of months, or year within which the abuse occurred.

It is similarly perplexing that the learned majority relies upon the trial court's faulty reasoning. *See* Majority Opinion, at 858–59. Indeed, the majority concludes that the record supports the trial court's finding that the Commonwealth presented sufficient evidence to prove the abuse occurred between May 2001 and August 2001. Like the trial court, the majority fails to specify anywhere in the record where the evidence indicates that the abuse occurred within any time frame. Neither the trial court nor the distinguished majority has explained how the

Commonwealth, in this case, fixed, with reasonable certainty, the time frame within which the crimes are said to have occurred. *Devlin, supra.*

The majority also fails to address that portion of *G.D.M.* where this Court held that the due process concerns of *Devlin* were satisfied where the victim was able to "at least" establish when the abuse began and when the abuse ended. *G.D.M.*, 926 A.2d at 990. The majority, instead, distinguishes *G.D.M.* in a cursory fashion along with another case cited by Brooks, *Commonwealth v. Groff*, 378 Pa.Super. 353, 548 A.2d 1237 (1988).[7] In so doing, the majority states that neither case "holds that due process requires a victim of sexual abuse to provide temporal testimony of specific incidents that occurred during a prolonged period of abuse." Majority Opinion, at 859.

While I agree with this, I would suggest, more to the point here, that what fundamental due process does require is that the Commonwealth present evidence fixing the date or dates, with reasonable certainty, upon which the crimes are said to have occurred. *Devlin, supra.* Indeed, in both *Groff* and *G.D.M.*, the Commonwealth presented testimony either from the victim or other witnesses establishing, with reasonable certainty, the time frame within which the crimes alleged were said to have taken place. The absence of such evidence in the instant matter drives my determination that the Commonwealth failed to establish when the offenses occurred with

---

7. In *Groff*, this Court determined that the Commonwealth proved with sufficient specificity the time frame within which the offense occurred (during the summer of 1985) to withstand appellant's due process challenge under *Devlin*, despite that the victim could not recall when the abuse occurred, and could say only that she was living in appellant's house and had been wearing a bathing suit at the time the incident occurred. *Groff*, 548 A.2d at 1239; 1242. The Commonwealth did so by eliciting testimony from other witnesses that during the summer of 1985, the victim complained that her "pee-pee" hurt, the victim said that appellant did "bad things," the victim began to kiss her grandmother on the lips, and the victim appeared to be under great strain. *Id.* at 1248.

sufficient particularity to withstand Brooks' due process challenge.

Moreover, the Commonwealth's argument that it fixed the dates of the alleged abuse with reasonable certainty is also unavailing. The Commonwealth argues:

> The instant matter involves even more convincing facts than those upon which this Court decided *G.D.M., Sr.*[,] as in *G.D.M., Sr.*, the abuse occurred continually over the period, daily in the case of C.B., and at least 10 times in the case of G.W. Each child testified the abuse occurred during the period in which they lived in an apartment in Chester with defendant and Sherry Walls.

Commonwealth's Brief, at 13.

I disagree that this case involves facts more convincing than those presented to this Court in *G.D.M.* In *G.D.M.*, the victim was able to indicate when the abuse began and when the abuse ended by both month and year. Here, C.B. and G.W. could do no more than allege that the abuse occurred when they lived with Brooks at some undefined time in the past. Evidence that Brooks abused the children during the period in which they lived with Brooks and Sherry Walls may well have established a fixed time period of when the abuse occurred. But the Commonwealth failed to establish with any degree of certainty when the children lived with Brooks.

Under these circumstances, the due process concerns of *Devlin* were not satisfied because the Commonwealth failed to establish when the abuse occurred with reasonable certainty. The cases herein do not stand for the proposition that the Commonwealth need not prove any dates at all. Rather, they indicate the Commonwealth must at least present evidence the crimes charged occurred during some span of months during some identified year, so that the defendant may be afforded a reasonable opportunity to frame his defense.

*Devlin, supra; Jette, supra; G.D.M., supra.* Where the Commonwealth charges a defendant with committing certain offenses during a defined time period, due process cannot allow the Commonwealth to simply present evidence that the crimes occurred at some amorphous time in the past. To allow this would be to strip that defendant of his due process right to defend himself against those charges. The Commonwealth cannot sustain a conviction merely by proving that the alleged offenses were committed upon some unshown date or dates in the past.

Because the Commonwealth failed to establish when the offenses occurred with sufficient particularity to withstand Brooks' due process challenge, I would reverse the trial court and vacate Brooks' judgment of sentence.