J-A19034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                      :          PENNSYLVANIA
                                        :
             v.                       :
                                        :
                                        :
RICK JASON MONNETT                  :
                                        :
            Appellant             :      No. 1060 MDA 2021

Appeal from the Judgment of Sentence Entered October 14, 2020
In the Court of Common Pleas of Perry County Criminal Division at
No(s): CP-50-CR-0000420-2018

BEFORE:    BOWES, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:       **FILED: SEPTEMBER 22, 2022**

Appellant Rick Jason Monnett appeals from the judgment of sentence entered in the Court of Common Pleas of Perry County following his conviction at a bench trial on the charges of driving while under the influence ("DUI")-general impairment, DUI-highest rate, disregarding traffic lanes, careless driving, and reckless driving.[1]  After a careful review, we affirm.

The relevant facts and procedural history are as follows: After a motorcycle accident, Appellant was charged with various DUI and traffic offenses, and on October 11, 2019, represented by counsel, he proceeded to a bench trial.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S.A. §§ 3802(a)(1), 3802(c), 3309(1), 3714(a), and 3736(a), respectively.

At the trial, Kristen Bittle testified that, on July 8, 2018, she was driving on Route 850 towards Shermans Dale when she came upon a motorcycle lying on the road. N.T., 10/11/19, at 4. As she approached the scene, she observed Appellant was badly injured and lying on the road. *Id.* Ms. Bittle exited her vehicle and discovered a nurse, who had arrived on the scene, as well as Appellant's paramour, who indicated she had been a passenger on the motorcycle. *Id.* at 4-5. The three women attempted to comfort Appellant and held his "head still" until emergency personnel arrived on the scene. *Id.*

While they were waiting for emergency personnel, Ms. Bittle noticed Appellant and his paramour both smelled of alcohol, and neither person had been wearing a helmet. *Id.* at 4, 6. Ms. Bittle indicated Appellant was "going in and out" of consciousness; however, he told her that he had been driving the motorcycle and lost control when he "looked down to avoid something[.]" *Id.* at 7. She noted Appellant's paramour, who was clearly upset, also told her Appellant was driving the motorcycle at the time of the accident. *Id.* Ms. Bittle testified the ambulance arrived, and Appellant was immediately removed from the scene. *Id.* at 8.

Michelle McLaughlin testified she was Appellant's paramour. On July 8, 2018, just before lunch, the two of them began riding on a motorcycle, and they visited four bars between approximately noon and 2:00 p.m. *Id.* at 18-20. Ms. McLaughlin testified she and Appellant each consumed "a couple [of] beers and a couple [of] shots" at every bar. *Id.* at 19-20.

When the couple left the fourth bar, Ms. McLaughlin expressed to Appellant she was concerned about them traveling on the motorcycle because they had been drinking. *Id.* at 21. Appellant told Ms. McLaughlin the "wind would take care of it, that he would be sober." *Id.* Ms. McLaughlin testified they left the fourth bar with Appellant driving the motorcycle and her as a passenger. *Id.* at 22. She testified she was concerned because they both were intoxicated at this time. *Id.*

Ms. McLaughlin testified "we went riding, and we turned on [Route] 850; and alongside the creek, we had a wreck. I am not sure how—I don't know what happened, how we—the bike dropped down, but I just know that both of us were on the ground." *Id.* at 21. She clarified they had traveled only a "couple of miles" from the fourth bar when the motorcycle crashed. *Id.* at 22. She remembers being "bounced off the pavement" and realizing Appellant was badly injured with blood coming out of his ear, as well as a gash to the back of his head. *Id.*

Ms. McLaughlin testified a woman stopped and called 911. *Id.* Then "it just seemed like [she] blinked, and there was [*sic*] people everywhere." *Id.* She testified she sustained a concussion and has no memory of Appellant saying anything at the scene other than "[t]hat he wanted [to stand] up[.]" *Id.* at 23. She further indicated she has no memory of speaking to police officers at the scene. *Id.* at 24.

Ms. McLaughlin admitted that, on January 3, 2019, she gave a handwritten notarized statement to the police wherein she indicated she was driving the motorcycle at the time of the accident. *Id.* at 25-26. However, Ms. McLaughlin testified the written statement was "false," and she gave it to the police because "[Appellant] talked [her] into it." *Id.* at 27. She explained they were engaged, and since Appellant already had numerous DUI convictions prior to the accident, she agreed when he asked her to tell the police she had been driving the motorcycle at the time of the accident. *Id.*

Ms. McLaughlin testified that, subsequently, in April or May of 2019, she went to the police barracks and admitted to the police that her written statement was false. *Id.* at 28. She testified no one forced her to recant her written statement, and she regrets ever writing the false statement. *Id.* Ms. McLaughlin admitted her romantic relationship with Appellant ended in late March of 2019. *Id.* at 29.

Ms. McLaughlin admitted on cross-examination that, in September of 2018, while she was driving Appellant's truck, she was in an accident and charged with DUI offenses. *Id.* at 36-37. She later received one year of probation and spent forty-eight hours in jail for the offenses. *Id.* at 48.

Ms. McLaughlin also admitted on cross-examination that she recanted her written statement approximately one week after she and Appellant ended their romantic relationship. *Id.* at 42. She admitted that, after the motorcycle accident at issue, she told several people she had been driving the motorcycle

when it crashed. *Id.* at 46. However, she explained she did so because Appellant indicated if she "took the rap" she would only get "ARD." *Id.* at 47.

On re-direct examination, Ms. McLaughlin testified she neither has a license to drive a motorcycle nor does she own a motorcycle. *Id.* at 50. She testified that, after the motorcycle accident but before the truck accident, she told a few of her co-workers at a restaurant she had been the driver of the motorcycle so that, if the police asked around, they would not think Appellant was the driver. *Id.* at 53. Ms. McLaughlin testified it was wrong for her to do this, and she was "sorry." *Id.*

At this point, the parties stipulated Appellant's blood alcohol content at the time of the accident was .242%. Pennsylvania State Police Trooper Brandon Haney testified he was on duty and dispatched to the motorcycle accident at 3:39 p.m. on July 8, 2018. *Id.* at 60-61. He indicated that, by the time he arrived at the scene, Appellant had been taken to the hospital by ambulance, but Ms. McLaughlin remained behind. *Id.* at 63. The trooper testified Ms. McLaughlin provided basic information at the scene, including "that [Appellant], Mr. Monnett, was the operator of the [motorcycle] and that she was the passenger." *Id.*

The trooper further testified that, at the scene, Ms. Bittle related to him that she had not witnessed the crash; however, she was one of the first people on the scene, and she assisted Appellant. *Id.* at 64. Ms. Bittle told the trooper

Appellant "related to her that he was the operator." ***Id.*** Ms. Bittle also told the trooper Appellant smelled of alcohol. ***Id.*** at 65.

Trooper Haney testified the motorcycle was registered to Appellant. ***Id.*** He noted there were no skid marks at the scene of the accident. ***Id.*** at 73. He further noted there were no adverse weather conditions or obstacles found in the road to explain why the motorcycle may have crashed. ***Id.*** at 76.

Trooper Haney testified he traveled to the hospital to interview Appellant, but he was denied access because Appellant "wasn't taking…any visitors." ***Id.*** Trooper Haney secured a search warrant for Appellant's hospital records, which revealed a medical blood sample had been taken from Appellant at 4:22 p.m. on July 8, 2018, and Appellant's blood alcohol content was .242%. ***Id.*** at 66.

The defense called Charlotte Lindsey, who is Appellant's sister, as a witness. Ms. Lindsey testified she was notified on July 8, 2018, that Appellant had been in an accident, and she notified his daughter, who is Ms. Lindsey's niece. ***Id.*** at 79. Ms. Lindsey and her niece traveled to the hospital where they saw Ms. McLaughlin. ***Id.*** at 80.

Ms. Lindsey testified that, at this time, Ms. McLaughlin said nothing about who had been driving the motorcycle; however, approximately two or three weeks later, Ms. McLaughlin told Ms. Lindsey she had been driving the motorcycle at the time of the accident. ***Id.*** at 82. Ms. Lindsey indicated Ms. McLaughlin volunteered this information without being prompted. ***Id.*** She

specifically testified Ms. McLaughlin said, "I was the operator of the motorcycle; I was trying to take your brother's life because I wanted his belongings." **Id.** Ms. Lindsey testified that, on four separate occasions thereafter, Ms. McLaughlin told her she had been driving the motorcycle at the time of the accident. **Id.** at 83.

Ms. Lindsey admitted she never saw Ms. McLaughlin driving the motorcycle; however, she saw her "pushing it around the yard…or sitting on it." **Id.** at 84. She admitted that every time she saw Appellant and Ms. McLaughlin on the motorcycle Appellant was the one driving. **Id.** at 93. She indicated that, in February or March of 2019, Ms. McLaughlin assaulted Appellant, who was still recovering from brain injuries. **Id.** at 85.

At the conclusion of the trial, the trial court convicted Appellant of the offenses indicated *supra*. On October 14, 2020, the trial court sentenced Appellant, and on October 20, 2020, Appellant filed a timely counseled post-sentence motion wherein he presented sufficiency and weight of the evidence claims.[2]

On January 21, 2021, the trial court filed an order indicating "upon consideration of the Defendant's Post-Sentence Motion and Supplemental Post-Sentence Motion, it is hereby ORDERED AND DIRECTED that the

_____

[2] Thereafter, the trial court permitted Appellant to supplement his post-sentence motion upon receipt of the trial transcripts, and Appellant again presented sufficiency and weight of the evidence claims.

- 7 -

Defendant's Post-Sentence Motion and Supplemental Post-Sentence Motion are DENIED." Trial Court Order, filed 1/21/21 (capitalization in original). Notably, the trial court's order failed to inform Appellant of his appellate rights.

On June 14, 2021, Appellant filed a counseled notice of appeal.[3] The trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement, and Appellant timely complied raising sufficiency and weight of the evidence claims. The trial court filed a Pa.R.A.P. 1925(a) opinion.

On appeal, Appellant presents the following issues in his "Statement of the Questions Involved" (verbatim):

1. Whether there was sufficient evidence to support the trial court's finding of guilt as to DUI: General Impairment, and DUI: Highest Rate, because the Commonwealth failed to present sufficient evidence that Monnett was the operator and driver of the motorcycle before the accident[?]

2. Whether the trial court's verdict of guilt as to DUI: General Impairment and DUI: Highest Rate, was against the weight of the evidence where the Commonwealth's evidence did not establish that Monnett was the operator and driver of the motorcycle before the accident[?]

Appellant's Brief at 1 (suggested answers omitted).

Initially, before examining the issues presented by Appellant, we must determine whether this appeal was timely filed. Where a criminal defendant

_____

[3] On this same date, Appellant filed in the trial court a petition to file a notice of appeal *nunc pro tunc*. On August 4, 2021, the trial court filed an order indicating "the Petition for *Nunc Pro Tunc* Filing of a Notice of Appeal is GRANTED. The Defendant is given 30 days within which to perfect an appeal in this case." Trial Court Order, filed 8/4/21. Appellant did not file a second notice of appeal.

files a timely post-sentence motion, a notice of appeal must be filed within thirty days from the order denying that motion. *See* Pa.R.Crim.P. 720(A)(2)(a). In the case *sub judice*, Appellant filed a timely post-sentence motion,[4] which the trial court denied on January 21, 2021. Thus, Appellant had thirty days, until Monday February 22, 2021, to file a timely notice of appeal.[5] Appellant's notice of appeal was filed on June 14, 2021, which was clearly late.

However, this Court has excused an untimely notice of appeal where there has been a breakdown in the trial court's operations. *See Commonwealth v. Patterson*, 940 A.2d 493, 499 (Pa.Super. 2007) (holding despite the general rule that "an appellate court cannot extend the time for filing an appeal," this "does not affect the power of courts to grant relief in the case of fraud or breakdown in the processes of the court"). We have held that such a breakdown occurs where the trial court fails to abide by Pennsylvania

---

[4] A written post-sentence motion must generally be filed within ten days after the imposition of sentence. Pa.R.Crim.P. 720(A)(1). Here, Appellant was sentenced on October 14, 2020, and Appellant filed a counseled post-sentence motion on October 20, 2020. Thus, Appellant's post-sentence motion was timely. *See id.*

[5] Since the thirtieth day fell on a Saturday, February 20, 2021, Appellant would have had until Monday, February 22, 2021, to file a timely notice of appeal. 1 Pa.C.S.A. § 1908 (regarding the computation of time "[w]henever the last day…shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation.").

Rule of Criminal Procedure 720(B)(4)(a), which provides that "[a]n order denying a post-sentence motion…shall include notice to the defendant of the following: (a) the right to appeal and the time limits within which the appeal must be filed[.]" Pa.R.Crim.P. 720(B)(4)(a). **See Patterson**, **supra. See also Commonwealth v. Lehman**, No. 379 WDA 2021, 2022 WL 366881 (Pa.Super. filed 2/8/22) (unpublished memorandum) (holding that, where the defendant filed a timely post-sentence motion and the trial court denied the motion without explaining the defendant's appeal rights in the order denying the post-sentence motion under Rule 720(B)(4)(a), a breakdown in the trial court's operations occurred such that the defendant's untimely appeal was excused); **Commonwealth v. Heard**, No. 1517 EDA 2019, 2020 WL 7353808 (Pa.Super. filed 12/15/20) (unpublished memorandum) (same).[6]

In the case *sub judice*, the trial court's order denying Appellant's post-sentence motion did not contain notice to Appellant of the right to appeal or the time limits within which the appeal must be filed.  Thus, we conclude there was a breakdown in the trial court's operations such that we shall excuse the otherwise untimely-filed appeal. **See id.** Accordingly, we turn to an examination of the merits of Appellant's issues.

---

[6] **See** Pa.R.A.P. 126(b) (unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

In his first issue, Appellant contends the evidence was insufficient to sustain his convictions for DUI-general impairment and DUI-highest rate.[7]

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brooks*, 7 A.3d 852, 856-57 (Pa.Super. 2010) (citations omitted).

In this case, Appellant's sufficiency argument is specific in nature; to wit, he avers the evidence was insufficient to prove that he was the driver or operator of the motorcycle at the time the accident occurred. In light of Appellant's specific sufficiency claim, we need not conduct a thorough review of the evidence to determine whether it can support a finding that all of the elements for DUI-general impairment or DUI-highest rate have been met.

_____

[7] Appellant raises no specific issue as to his remaining convictions.

- 11 -

Rather, we will focus on the specific issue raised by Appellant: whether the evidence was sufficient to establish Appellant was operating or driving the motorcycle when it crashed on July 8, 2018.[8]

Here, viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, we conclude the evidence sufficiently establishes Appellant was driving or operating the motorcycle. Specifically, Ms. Bittle, who came upon the motorcycle crash shortly after it occurred on July 8, 2018, testified she assisted Appellant, who was badly injured. While they were waiting for emergency personnel to arrive, Appellant and Ms. McLaughlin informed Ms. Bittle that Appellant had been driving the motorcycle at the time the crash occurred. N.T., 10/11/19, at 4-8.

Further, Ms. McLaughlin testified during trial that Appellant was driving the motorcycle when it suddenly "wreck[ed]." *Id.* at 21. Also, Trooper Haney testified he arrived on the scene shortly after Appellant was taken by ambulance. He testified Ms. McLaughlin provided basic information, including that Appellant was the operator of the motorcycle and she was a passenger. *Id.* at 63.

Based on the aforementioned, and applying our standard of review, we conclude the evidence was sufficient to establish Appellant was driving or

---

[8] As Appellant correctly indicates, under 75 Pa.C.S.A. § 3802(a)(1) and (c), the Commonwealth was required to prove beyond a reasonable doubt, *inter alia*, that Appellant was driving, operating or in actual physical control of the movement of the motorcycle. *See* 75 Pa.C.S.A. § 3802(a)(1), (c).

operating the motorcycle so as to sustain his DUI convictions. *See Brooks*, *supra*.

We note we reject Appellant's claim the evidence was insufficient to demonstrate that he, as opposed to Ms. McLaughlin, was the driver of the motorcycle at the time it crashed. In developing his argument, Appellant points to Ms. McLaughlin's admission that she provided the police with a signed notarized written statement indicating she was driving the motorcycle at the time of the crash, Ms. McLaughlin's admission that she told people she was driving the motorcycle, and Appellant's sister's testimony that Ms. McLaughlin told her she was driving the motorcycle at the time of the crash.

We note the trial court, as the finder of fact, was free to weigh the testimony, and viewing the entire record, the evidence was sufficient to establish Appellant's identity as the driver or operator of the motorcycle. *See Brooks*, *supra*. That is, the trial court was free to believe Ms. McLaughlin's explanation, and subsequent recantation, of her written statement, as well as her explanation for why she falsely told people that she, and not Appellant, had been driving the motorcycle. Simply put, there was sufficient evidence supporting the trial court's conclusion that Appellant, as opposed to Ms. McLaughlin, was the driver or operator of the motorcycle. *See Brooks*, *supra*.

In his final claim, Appellant contends the trial court's verdict as to the DUI offenses is against the weight of the evidence.[9] Specifically, Appellant argues the trial court's finding that he was driving or operating the motorcycle on July 8, 2018, when it crashed shocks one's sense of justice in light of the evidence Ms. McLaughlin was driving or operating the motorcycle. In this vein, Appellant contends "Ms. McLaughlin's testimony that [Appellant] was the operator of the motorcycle is not credible." Appellant's Brief at 23. He notes "Ms. McLaughlin has lied numerous times along with signing a written statement admitting that she was the operator and telling several people that she was in fact the operator of the motorcycle, not [Appellant]." *Id.*

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa.Super. 2015) (quotation marks and quotation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa.Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, *supra*.

---

[9] Appellant adequately preserved his weight of the evidence claim as to his DUI convictions in the lower court. *See* Pa.R.Crim.P. 607. Appellant presents no challenge to the weight of the evidence as to his remaining convictions.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this Court does not review the underlying question of whether the verdict is against the weight of the evidence. *See id.*

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* at 546 (quotation omitted). Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id.* (quotation marks and quotation omitted).

Here, the trial court rejected Appellant's weight of the evidence claim, and we find no abuse of discretion in this regard. *Talbert*, *supra*. We note the trial court was free to determine the weight and inferences to be drawn from Ms. McLaughlin's written statement, as well as her recantation of the statement. Also, the trial court was free to weigh the evidence pertaining to Ms. McLaughlin telling various people that she was the driver of the motorcycle, as well as her explanation that she lied to protect Appellant.

To the extent Appellant requests that we re-weigh the evidence and assess the credibility of the witnesses presented at trial, we decline to do so

as it is a task that is beyond our scope of review. ***See Commonwealth v. Collins***, 70 A.3d 1245, 1251 (Pa.Super. 2013) (stating that "[a]n appellate court cannot substitute its judgment for that of the finder of fact").

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/22/2022