J-A35034-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JEFFREY SCOTT PINCHOCK, | : | |
| | : | |
| Appellant | : | No. 135 WDA 2015 |

Appeal from the Judgment of Sentence December 18, 2014
in the Court of Common Pleas of McKean County,
Criminal Division, No. CP-42-CR-0000225-2013

BEFORE: BENDER, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED JANUARY 19, 2016**

Jeffrey Scott Pinchock ("Pinchock") appeals from the judgment of sentence imposed after a jury convicted him of indecent assault and corruption of minors.[1] We affirm.

The female victim, W.R., met Pinchock in 2012, when she was fifteen years old. N.T. (trial), 12/9/13, at 6-7. At that time, Pinchock was thirty-nine years old. *Id.* at 7. Pinchock resided in the victim's home with her mother and her mother's female romantic partner, Kristin Smithmyer ("Smithmyer"). *Id.* Smithmyer had known Pinchock for several years, and she let him stay in one of the rooms of her house. *Id.* at 61.

The victim testified that she and Pinchock were friends, and he would oftentimes take her fishing, drive her to different places, and smoke

---

[1] 18 Pa.C.S.A. §§ 3126(a)(1), 6301(a)(1)(i). Pinchock's conviction of indecent assault was graded as a second-degree misdemeanor. Accordingly, we will hereinafter refer to this offense as indecent assault – M2. Pinchock's corruption of minors conviction was graded as a first-degree misdemeanor.

marijuana with her, which he supplied.  *Id.* at 7-11.  Pinchock would also buy the victim items such as soda and ice cream.  *Id.* at 10.  At some point, Pinchock began saying to the victim that she "owed" him sex in return for all of the things that he did for her.  *Id.* at 10-11.  According to the victim, "[Pinchock] would say that he did a lot for me, he drove me places, he took me places and he bought me things and that he deserved something in return."  *Id.* at 10; *see also id.* at 11 (wherein the victim stated that Pinchock "basically just said, you owe me, you owe me, you should do this for me.").

On August 30, 2012, while the victim's mother and Smithmyer were in Florida, Pinchock picked the victim up at the end of the school day, and drove her back to their home.  *Id.* at 12-13.  There was no one else in the home at the time.  *Id.* at 13.  Pinchock offered the victim a marijuana "joint" to smoke, but said "if I give you this, then I expect something in return." *Id.* at 14; *see also id.* (wherein the victim explained that Pinchock wanted sex in return).  The victim told Pinchock no, whereupon he began yelling at her, and acting aggressively.  *Id.*  The victim went to her room to get away from Pinchock, and took out her phone to text her friends.  *Id.*  Pinchock followed her to her room, grabbed her phone and threw it, and told her she was not going anywhere.  *Id.* at 14-15.  Pinchock continued yelling, repeatedly told the victim that she owed him for everything he did for her. *Id.* at 15.  Eventually, the victim gave into Pinchock's demands and took off her clothes.  *Id.* at 15-16.  The victim testified as to her fear that Pinchock

was going to hurt her. *Id.* at 16. The victim got onto her bed, and Pinchock removed his clothes. *Id.* at 16-17. According to the victim, "[Pinchock] got on top of me and put his penis in my vagina, [and] then I just closed my eyes." *Id.* at 17; *see also id.* (wherein the victim said that she did not say anything to Pinchock because "I was scared").

The Commonwealth also presented the testimony of Smithmyer, who had known Pinchock for approximately ten years. *Id.* at 55-56. Smithmyer testified that when she was fifteen or sixteen years-old, Pinchock frequently would take her fishing and smoke marijuana with her, which he provided. *Id.* at 56-57. Pinchock would also buy Smithmyer cigarettes and other items. *Id.* at 58. Smithmyer stated that although she and Pinchock initially were friends, Pinchock subsequently made comments to her indicating that he desired a sexual relationship. *Id.*; *see also id.* (wherein Smithmyer stated that "I could tell that … he wanted something more from me …."). Eventually, Pinchock directly told Smithmyer, while she was still a minor, that he wanted to have sex with her, and that she "owed" it to him. *Id.* at 58-59; *see also id.* at 59 (wherein Smithmyer explained that Pinchock indicated that she owed him sex for "taking me fishing, [and] on a trip to Cabella's," and because "he smoked weed with me, bought me cigarettes or would take me to Sheetz and buy me food …."). Smithmyer told Pinchock "I am not having sex with you," and she never had sexual relations with him. *Id.* at 59.

The victim first reported the sexual assault to her mother several months after it occurred, in March 2013.[2] The victim testified that she did not report it earlier because Pinchock had threatened to kill her and/or her family members if she ever told anyone. *Id.* at 18-19.

In March 2013, the Commonwealth charged Pinchock with indecent assault – M2 and corruption of minors, as well as statutory sexual assault,[3] sexual assault,[4] and felony corruption of minors – sexual nature[5] (collectively, "the remaining sexual offenses").

Prior to trial, the Commonwealth filed a Motion *in limine*, seeking to introduce "prior bad acts" evidence to establish a common plan or scheme by Pinchock. Specifically, the Commonwealth sought to introduce testimony from Smithmyer about Pinchock's having previously pressured her to engage in sexual activity with him while she was a minor. After conducting a hearing, the trial court entered an Opinion and Order on November 26, 2013, granting the Motion *in limine* and explaining the court's rationale underlying its ruling.

---

[2] The victim's mother had kicked Pinchock out of the house approximately one month earlier, after discovering that Pinchock had been giving the victim marijuana. N.T., 12/9/13, at 76. The victim's mother additionally stated that "I told … [Pinchock] that [the victim] was afraid of him because he had smashed her cell phone at one point when I was out of town in Florida …." *Id.* at 76-77.

[3] 18 Pa.C.S.A. § 3122.1.

[4] 18 Pa.C.S.A. § 3124.1.

[5] 18 Pa.C.S.A. § 6301(a)(1)(ii).

- 4 -

The matter proceeded to a jury trial in December 2013. At the close of trial, the jury found Pinchock guilty of indecent assault – M2 and corruption of minors, but found him not guilty of the remaining sexual offenses. Pinchock filed a post-trial Motion, which the trial court denied.

In February 2014, the trial court issued an Order directing that a member of the Sexual Offender Assessment Board ("SOAB") assess Pinchock,[6] and issue a recommendation as to whether he meets the criteria of a sexually violent predator ("SVP"). The SOAB assigned Brenda Manno ("Manno"), a licensed social worker, to evaluate the case and prepare a report. Manno prepared a report ("SVP Report"), opining that Pinchock is an SVP. The trial court subsequently held an SVP hearing, at which Manno testified.[7] By an Opinion and Order entered on November 24, 2014, the trial court directed that Pinchock be classified as an SVP.[8] As a result of his SVP classification, Pinchock is required to register with the Pennsylvania State Police as a sex offender for his lifetime, pursuant to the Sex Offender

---

[6] Pinchock did not participate in the assessment.

[7] As we discuss below, Manno conceded at the hearing that she made an error in the SVP Report concerning Pinchock's conviction of corruption of minors. N.T., 10/17/14, at 41. However, Manno testified that such error did not contribute to her opinion that Pinchock is an SVP. *Id.* at 53.

[8] The trial court stated that "although it had concerns regarding the basis for [] Manno's conclusions/opinion[, which] initially caused the [c]ourt hesitation[, a]fter a review of the known facts in this case[,] the [c]ourt finds that [Pinchock] is an S[VP]." Opinion and Order, 11/24/14, at 5 (unnumbered); *see also id.* at 6 (unnumbered) (stating that "[a]lthough [] Manno's [SVP R]eport was inaccurate in some respects, the [c]ourt still accepts [] Manno's opinion as accurate.").

Registration and Notification Act ("SORNA").[9]   On December 18, 2014, the trial court sentenced Pinchock to an aggregate term of 15 months to 6 years in prison.

Pinchock timely filed a Notice of Appeal.   In response, the trial court ordered him to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.   Pinchock timely filed a Concise Statement, after which the trial court issued a Pa.R.A.P. 1925(a) Opinion.

On appeal, Pinchock presents the following issues for our review:

> Should the Superior Court reverse and dismiss [Pinchock's] conviction[s] where:
>
> a.  The weight of the evidence of [] record does not support the verdict?
>
> b.  The verdict rendered is logically and legally inconsistent where the jury found [that] there was no sexual contact[,] but found [Pinchock] guilt[y] o[f] indecent assault [– M2]?
>
> c.  The [trial] court improperly admitted prior bad acts of [Pinchock] involving a remote and unrelated incident as to prevent [Pinchock] from receiving a fair trial[,] since the evidence was overly prejudicial?
>
> d.  [Pinchock] should not have been required to participate in [SORNA's] reporting requirements since the Megan's Law reporting requirement was not the prevailing law at the time the offense occurred[,] but was mandated as of the date of conviction?

---

[9] **See** 42 Pa.C.S.A. § 9799, *et seq.*   Under SORNA, Pinchock's conviction of indecent assault – M2 is classified as a Tier I sexual offense.   **Id.** § 9799.14(b)(6); **see also id.** § 9799.15(d) (providing that "[a]n individual convicted of a Tier I sexual offense … who is determined to be a sexually violent predator under section 9799.24 (relating to assessments) shall register for the life of the individual.").

      e. [Manno] failed to consider legally relevant and proper
         evidence in reaching [her] conclusion [that Pinchock] is
         a[n SVP,] as defined under 42 Pa.C.S.A. [§] 9979?

Brief for Appellant at 15.

Pinchock first argues that "[t]he Superior Court should reverse and dismiss [his] conviction[s] where [the] weight of the evidence of the record does not support the verdict." **Id.** at 29 (emphasis omitted).[10]

We review a challenge to the weight of the evidence under the following standard:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented,

---

[10] In connection with this issue, Pinchock also appears to challenge the *sufficiency* of the evidence. **See** Brief for Appellant at 29 (setting forth the standard of review for sufficiency claims); **see also id.** at 31 (challenging the "sufficiency of the victim's testimony"). However, Pinchock did not raise a sufficiency challenge in either his court-ordered Pa.R.A.P. 1925(b) Concise Statement or his Pa.R.A.P. 2116(a) Statement of Questions Involved section. Moreover, sufficiency challenges are distinct from challenges to the weight of the evidence. **See Commonwealth v. Birdseye**, 637 A.2d 1036, 1039 (Pa. Super. 1994) (differentiating between sufficiency and weight challenges, and observing that "in making a claim that the verdict was against the weight of the evidence, it is conceded that there was sufficient evidence to sustain the verdict."). Accordingly, Pinchock failed to preserve his sufficiency claim for our review. **See** Pa.R.A.P. 1925(b)(4)(vii) (providing that "[i]ssues not included in the [Concise] Statement … are waived."); Pa.R.A.P. 2116(a) (stating that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). Nevertheless, even if Pinchock had not waived his sufficiency challenge, we would conclude that it lacks merit based on the trial court's analysis concerning the sufficiency of the evidence in its Pa.R.A.P. 1925(a) Opinion. **See** Trial Court Opinion, 4/23/15, at 3-4 (unnumbered). Indeed, there was ample evidence presented for the jury to have properly found that the Commonwealth proved the elements of indecent assault – M2 and corruption of minors beyond a reasonable doubt.

an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis and citations omitted).

Relief on a weight of the evidence claim is reserved for extraordinary circumstances, when the [fact-finder's] verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. On appeal, [an appellate] Court cannot substitute its judgment for that of the [fact-finder] on issues of credibility, or that of the trial judge respecting weight.

*Commonwealth v. Sanchez*, 36 A.3d 24, 27 (Pa. 2011) (citations and quotation marks omitted).

Pinchock argues that the jury's guilty verdicts were against the weight of the evidence because the victim's testimony was not credible. *See* Brief for Appellant at 30-31 (asserting that the victim described "the location of the [sexual assault] in a bedroom that was not even in existence as of August 2012, and [there were] numerous inconsistencies pervasive to the evidence presented.").

In its Pa.R.A.P. 1925(a) Opinion, the trial court rejected Pinchock's weight of the evidence claim, stating, *inter alia*, that "[s]ince credibility was left [to] the discretion of the jury to assess, [Pinchock's] assertions regarding the weight of the evidence lack merit." Trial Court Opinion,

4/23/15, at 4 (unnumbered); *see also Sanchez, supra* (stating that an appellate court cannot substitute its judgment for that of the fact-finder on issues of credibility). We discern no abuse of discretion by the trial court in rejecting Pinchock's claim, nor is the jury's verdict so contrary to the evidence as to shock our collective sense of justice. *See Sanchez, supra*. Accordingly, Pinchock's first issue does not entitle him to relief.

Next, Pinchock contends that his conviction of indecent assault – M2 must be reversed because the jury's guilty verdict on this count was inconsistent with their acquittal concerning the remaining sexual offenses. *See* Brief for Appellant at 31-32. Pinchock avers that

> [he] was convicted of indecent assault [– M2,] which does not require penetration[,] but only touching a victim in inappropriate places of her body[.] … The jury's inconsistent verdict clearly finds there was some measure of inappropriate touching[,] but obviously no penetration as defined. Thus the necessary elements of indecent assault [– M2] cannot be determined of having to occur [*sic*] if the jury's verdict does not find [that Pinchock] engaged in any inappropriate touching.

*Id.* at 32; *see also id.* at 15 (arguing that "[t]he verdict rendered is logically and legally inconsistent where the jury found [that] there was no sexual contact …."").

Concerning inconsistent verdicts and acquittals, our Pennsylvania Supreme Court has explained as follows:

> Federal and Pennsylvania courts alike have long recognized that jury acquittals may not be interpreted as specific factual findings with regard to the evidence, as an acquittal does not definitively establish that the jury was not convinced of a defendant's guilt. Rather, … an acquittal may merely show lenity on the jury's behalf, or that "the verdict may have been the result of

compromise, or of a mistake on the part of the jury." ***United States v. Dunn***, 284 U.S. 390, 394, 52 S. Ct. 189, 76 L. Ed. 356 (1932); ***see also*** [***Commonwealth v.***] ***Carter***, 282 A.2d [375,] 376 [(Pa. 1971)]. Accordingly, the United States Supreme Court has instructed that courts may not make factual findings regarding jury acquittals and, thus, cannot "upset" verdicts by "speculation or inquiry into such matters." ***Dunn***, 284 U.S. at 394.

***Commonwealth v. Moore***, 103 A.3d 1240, 1246 (Pa. 2014); ***see also***

***Commonwealth v. Rose***, 960 A.2d 149, 158 (Pa. Super. 2008) (stating

that "[i]nconsistent verdicts, while often perplexing, are not considered

mistakes and do not constitute a basis for reversal. … Thus, this Court will

not disturb guilty verdicts on the basis of apparent inconsistencies as long as

there is sufficient evidence to support the verdict.").

Based upon the foregoing authority, and because we have already

determined that Pinchock's convictions are supported by sufficient evidence,

his claim of an inconsistent verdict does not entitle him to relief. ***See***

***Moore, supra***; ***Rose, supra***.

In his third issue, Pinchock contends that the trial court erred and

deprived him of a fair trial by improperly permitting the Commonwealth to

introduce into evidence the "prior bad acts" testimony of Smithmyer. ***See***

Brief for Appellant at 32-34. According to Pinchock, Smithmyer's testimony

was "extremely prejudicial" and concerned an "unrelated prior bad act [that]

was not sexual in nature[, and] extremely remote in time from the date of

the alleged [] sexual [assault that] occur[ed] on August 31, 2012." ***Id.*** at

33, 34 (citing and relying upon ***Commonwealth v. Shively***, 424 A.2d

1257, 1259 (Pa. 1981) (stating that "evidence of prior crimes is admissible[] to prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused[,]" and that "[e]ven if evidence of prior criminal activity is admissible said evidence will be rendered inadmissible if it is too remote." (citation, emphasis and ellipses omitted)).

Our standard of review concerning a challenge to the admissibility of evidence is as follows:

> The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Johnson*, 42 A.3d 1017, 1027 (Pa. 2012) (citations and quotation marks omitted); *see also Commonwealth v. Patterson*, 91 A.3d 55, 68 (Pa. 2014) (stating that "[t]he admission of evidence of prior bad acts is solely within the discretion of the trial court, and the court's decision will not be disturbed absent an abuse of discretion.").

In its Opinion and Order entered on November 26, 2013, the trial court thoroughly addressed Pinchock's claim, set forth the applicable law and pertinent preliminary hearing testimony of the victim and Smithmyer, and determined that Smithmyer's testimony would be admissible at trial to establish a common plan or scheme. *See* Opinion and Order, 11/26/13, at

1-7 (unnumbered). The trial court's sound analysis is supported by the law and the record, and we affirm on this basis in concluding that the court properly exercised its discretion in admitting this evidence. ***See id.***

In his fourth issue, Pinchock argues that the Commonwealth failed to meet its burden, by clear and convincing evidence, to establish that he is an SVP, since the evaluation and recommendation completed by Manno was not based on "legally relevant and proper evidence." Brief for Appellant at 34; ***see also id.*** at 36 (asserting that "Man[n]o based her findings on hearsay statements, inaccurate information[,] including the preliminary hearing transcript, outdated employment[] and mental health information[,] questionable drug and alcohol records, and factual inconsistencies that were established at trial[,] including the victim's contradicting statements made at the preliminary hearing and trial."). Additionally, Pinchock contends that his classification as an SVP was in error since "the Commonwealth failed to … establish [that he] suffers [from] a mental health disorder that makes him likely to engage in predatory sexually violent offenses." ***Id.*** at 37.

"[I]n reviewing the sufficiency of the evidence regarding the determination of SVP status, we will reverse the trial court only if the Commonwealth has not presented clear and convincing evidence sufficient to enable the trial court to determine that each element required by the statute[, *i.e.*, the SVP provisions of SORNA,] has been satisfied." ***Commonwealth v. Brooks***, 7 A.3d 852, 860 (Pa. Super. 2010) (citation omitted). Additionally, this Court has stated that

- 12 -

[a] challenge to the sufficiency of the evidence to support an SVP designation requires the reviewing court to accept the undiminished record of the case in the light most favorable to the Commonwealth. The reviewing court must examine all of the Commonwealth's evidence without consideration of its admissibility. A successful sufficiency challenge can lead to an outright grant of relief such as a reversal of the SVP designation, whereas a challenge to the admissibility of the expert's opinion and testimony is an evidentiary question which, if successful, can lead to a new SVP hearing.

*Commonwealth v. Prendes*, 97 A.3d 337, 356 (Pa. Super. 2014) (citations omitted).

In its Opinion and Order entered on November 24, 2014, the trial court addressed Pinchock's challenge to his SVP classification, thoroughly set forth the relevant law, and determined that notwithstanding the court's "concerns regarding the basis for [] Manno's conclusions/opinion," the Commonwealth established, by clear and convincing evidence, that Pinchock is an SVP. **See** Opinion and Order, 11/24/14, at 2-6. The trial court's analysis is supported by the law and the record, and we affirm on this basis in rejecting Pinchock's fourth issue. **See id.**

Finally, Pinchock argues that the trial court erred by "retroactively" applying the provision of SORNA requiring that he report as a sexual offender for his lifetime, where, at the time of the offense on August 30, 2012, the version of Megan's Law then in effect did not require a defendant convicted of indecent assault – M2 to register as a sexual offender. **See**

Brief for Appellant at 37-38;[11] *see also id.* at 38 (stating that "the commission of the crime concerning [] Pinchock occurred in August 2012[,] when … indecent assault [– M2] did not require mandatory reporting under Megan's Law[,] as such requirement did not take official effect until December [20], 2012[,] under 42 Pa.C.S.A. [§] 9799.13."). Pinchock avers that this Court's decision in **Commonwealth v. Bundy**, 96 A.3d 390 (Pa. Super. 2014), is controlling and compels a ruling that Pinchock is not required to register as a sexual offender. **See** Brief for Appellant at 37-38.

In **Bundy**, the defendant pled *nolo contendere* to, *inter alia*, indecent assault – M2 in 2009,[12] and was released on probation. **Bundy**, 96 A.3d at 391. At the time of his conviction, the version of Megan's Law then in effect did not require the defendant to register as a sex offender. **Id.** However, following a subsequent resentencing resulting from a probation violation, the defendant was informed that he would be required to register for 25 years pursuant to the new provisions of SORNA. **Id.** at 392; **see also** 42 Pa.C.S.A. §§ 9799.12, 9799.13(2), 9799.14(c)(1.2). The defendant filed a petition with the trial court seeking relief from the registration provision. **Bundy**, 96 A.3d at 392. While the defendant's petition was pending, an amendment to SORNA was enacted in March 2014, modifying 42 Pa.C.S.A.

---

[11] Pinchock does not challenge SORNA's constitutionality concerning its retroactive application.

[12] The defendant in **Bundy** was convicted of indecent assault – M2 under 18 Pa.C.S.A. § 3126(a)(8). Pinchock's conviction was under 18 Pa.C.S.A. § 3126(a)(1). Both crimes are graded as second-degree misdemeanors. **See id.** § 3126(b)(1).

J-A35034-15

§ 9799.13.[13]  **Bundy**, 96 A.3d at 392-93.  This Court held that because the

defendant was convicted of indecent assault – M2 in 2009, within the

timeframe provided for in paragraph (3.1)(i)(A) of section 9799.13

---

[13]  Amended section 9799.13 provides, in relevant part, as follows:

The following individuals shall register with the Pennsylvania State Police … and otherwise comply with the provisions of this subchapter:

(1) An individual who, on or after the effective date of this section[, *i.e.*, December 20, 2012], is convicted of a sexually violent offense and who has a residence within this Commonwealth or is a transient.

* * *

(2) An individual who, on or after [December 20, 2012], is, as a result of a conviction for a sexually violent offense, … being supervised by the Pennsylvania Board of Probation and Parole or county probation or parole ….

* * *

(3.1) The following:

(i) An individual who **between January 23, 2005, and December 19, 2012**, was:

(A) **convicted of a sexually violent offense**;

* * *

(ii) For purposes of this paragraph, the term "sexually violent offense" shall have the meaning set forth in section 9799.12 (relating to definitions), **except that it shall not include**:

* * *

(B) A conviction under 18 Pa.C.S. § 3126 (relating to indecent assault) where the crime is graded as a misdemeanor of the second degree ….

42 Pa.C.S.A. § 9799.13 (emphasis added).

- 15 -

(hereinafter "the exception timeframe"), and because paragraph (3.1)(ii)(B) excludes indecent assault, graded as a misdemeanor of the second degree, from the definition of a "sexually violent offense" triggering registration, the defendant was not subject to registration. *Id.* at 395-96.

In the instant case, there was no retroactive application of SORNA's registration provisions. Rather, at the time of Pinchock's **conviction** of indecent assault – M2 on December 10, 2013, this offense was classified as a Tier I sexual offense, which required lifetime registration in light of Pinchock's SVP classification. **See** 42 Pa.C.S.A. §§ 9799.14(b)(6), 9799.15(d). Unlike the situation in **Bundy**, Pinchock was not **convicted** of indecent assault – M2 within the exception timeframe provided for in section 9799.13(3.1)(i)(A). Moreover, to the extent that Pinchock points out that the **date of his offense**, *i.e.*, August 30, 2012, occurred within the exception timeframe, this fact is immaterial; the date of the offender's conviction controls. **See** 42 Pa.C.S.A. § 9799.13(3.1)(i)(A); **see also Bundy**, 96 A.3d at 395-96.

Judgment of sentence affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/19/2016

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE COURT OF COMMON PLEAS |
| Plaintiff | OF McKEAN COUNTY, PENNSYLVANIA |
| vs. | CRIMINAL DIVISION |
| JEFFREY S. PINCHOCK, | NO. 225 C.R. 2013 |
| Defendant. | |

## OPINION AND ORDER

The Commonwealth asserts that the testimony of Kristin Rose Smithmyer ("hereinafter "KRS") regarding the Defendant's alleged prior conduct directed toward her is admissible under Pa.R.Evd. 404(b)(2), the Common Plan or Scheme exception to the hearsay rule. The Defendant asserts that this testimony does not fall under this exception and, therefore, is inadmissible.[1] A hearing was held and the matter is now ready for decision.

## FACTUAL BACKGROUND

The central issue is whether the facts of these two allegations are significantly similar to demonstrate that the Defendant was acting under a common plan or scheme.

---

[1] The Defense also asserts that, since the Commonwealth failed to call W1 at the hearing to address their Motion *in imine*, the Commonwealth is precluded from presenting her testimony regarding prior bad acts at the time of trial. They assert that they should have been afforded the opportunity to cross examine her and fully explore all details of her allegations prior to trial. However, the issue is whether the defense has obtained appropriate notice "of the general nature of any such evidence the prosecutor intends to introduce at trial." Pa.R.Evid. 404(b)(2). In Commonwealth v. Lynch, 57 A.3d 120, at 126 (Pa.Super. 2012) the Superior Court held that [p]roper notice was given where an affidavit of probable cause set forth the substance of the witnesses proffered testimony and the defense had received the affidavit of probable cause prior to trial. The Lynch Court focused on whether the defense was subject to "unfair surprise" at the time of trial. The Court finds that the statement provided by the Commonwealth as an offer of proof adequately advises the defense of the substance and details of W1's testimony and, therefore, the defense can properly prepare for trial without "unfair surprise." Of course, if W1's testimony at trial was not in conformance with her prior statement the Court would, if requested by the defense to do so, consider excluding some or all of this testimony and, if appropriate, granting a request for a mistrial.

34

A summary of the facts asserted by KRS are as follows: When KRS was 15 or 16 she met the Defendant through mutual friends. Since KRS's D.O.B. is 7/25/1998, this would have been in 2003 and/or 2004; and, at that time the Defendant would have been thirty or thirty one years old (Defendant's D.O.B. 4/15/73). After the Defendant and KRS met she "partied" with the Defendant and others. She states "our friendship consisted of partying together, fishing and other outdoor activities." When KRS was "seventeen or so" the Defendant "started acting very amorous towards me (KRS) to the point of infatuation." The Defendant told KRS she was beautiful and would "make a perfect wife." KRS told the Defendant "no" and that she was not interested in him. After this the Defendant confronted KRS during a "few situations." The Defendant was upset and told KRS that she "lead him on" and that "he did so much for me like take me fishing and smoke weed with me and buy me things." Further, he told her "for payment of all that stuff he did for me that I should repay him with sex." KRS told the Defendant to "get that notion out of his head for good." The Defendant then became very upset and drove KRS home and "the situation was never discussed between us again."

The allegations in the current case are as follows: When the victim was 15 years old and around Labor Day, 2012, the Defendant and the victim were alone at their residence in McKean County. At that time the Defendant was approximately thirty nine years of age (Defendants' D.O.B. 4/15/1973). The Defendant had previously been given permission to reside at the same home as the victim and her Mother. The Defendant asked the victim if she wanted to smoke marijuana with him. The victim said "yes." The victim and the Defendant smoked marijuana together many times prior to this incident. While "rolling a joint" the Defendant told the victim that he "was always doing things for

her" and that she should do something for him and have sex with him. The victim told him no but the defendant persisted repeating that "he does stuff for her and she should repay him." The victim indicated no several times but then, because she felt he was going to harm her if she did not do it, laid on the bed while the Defendant got on top of her and had intercourse with her. The Defendant then left and, the next day, threatened to harm the victim if she told anyone about this incident.

## AUTHORITY

It is set forth in Rule 404(b)(2) that:

(b) Other Crimes, Wrongs, or Acts,

(2) Evidence of other crimes, wrongs, or acts may be admitted for purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

Pa.R.Evid. 404(b)(2). In Commonwealth v. Frank, 577 A.2d 609 (Pa. Super. Ct. 1990), the Superior Court discussed in detail the standard to apply when addressing a 404(b)(2) issue:

We are cognizant of the fact that a determination of whether evidence is admissible under the common plan exception must be made on a case by case basis in accordance with the unique facts and circumstances of each case. However, we recognize that in each case, the trial court is bound to follow the same controlling, albeit general, principles of law. When ruling upon the admissibility of evidence under the common plan exception, the trial court must first examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator. Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator. Given this initial determination, the court is bound to engage in a careful balancing test to assure that the common plan evidence is not too remote in time to be probative. If the evidence reveals that the details of each criminal incident are nearly identical, the fact that the incidents are separated by a lapse of time will not likely prevent the offer of the evidence unless the time lapse is excessive. Finally, the trial court must assure that the probative value of the evidence is not outweighed by its potential prejudicial

impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations.

Id. At 614.

In Commonwealth v. Aikens, 990 A.2d 1181 (Pa. Super. Ct. 2010) the Superior Court affirmed the decision of the trial court to allow the testimony of a defendant's 32 year old daughter that, when she was 15 years old, her father made her watch a pornographic video and then raped her. In that case the defendant's second daughter asserted that, when she was 14, her father made her watch a pornographic video and attempted have intercourse with her. The Superior Court held:

> In the case at bar, we believe that the fact pattern involved in the two incidents was markedly similar. In both cases, the victims were of like ages: T.S. was fourteen years old, and V.B. was fifteen years old. Both victims were Appellant's biological daughters. Appellant initiated the contact during an overnight visit in his apartment. He began sexual abuse by showing the girls pornographic movies. The assaults occurred in bed at night. While Appellant raped V.B. and indecently assaulted T.S., T.S. stopped Appellant from disrobing her and committing the more serious sexual assault. In addition, Appellant mimicked the grinding movements of sexual intercourse on T.S. in order to sexually gratify himself. These matching characteristics elevate the incidents into a unique pattern that distinguishes them from a typical or routine child-abuse factual pattern. Hence, we reject Appellant's position that we are pigeonholing sexual abuse cases to such an extent that any prior instance of child abuse would be admissible in a subsequent child abuse prosecution. *See also* Commonwealth v. Hughes, 521 Pa. 423, 555 A.2d 1264(1989) (evidence about prior rape correctly allowed at rape-murder trial since crimes were committed in similar geographic location, at similar time, characteristics of victim matched, and defendant used same method of attack). As was the case in *Hughes*, the similarities at issue herein were "not confined to insignificant details that would likely be common elements regardless of who committed the crimes." Id. At 1283.

Id. At 1185-1186.

In Commonwealth v. O'Brien, 836 A.2d 966 (Pa. Super. Ct. 2003), the Superior Court reversed the holding of the trial court that evidence of a prior sexual assault of two different minors years earlier was not admissible in a subsequent prosecution involving a different victim. The Superior Court held that the following similarities of the three assaults was sufficient to demonstrate a common plan or scheme: each boy was between eight and eleven years old; each boy knew the defendant because their parent(s) were friends with him; each crime was committed after the defendant was alone with the victims – and in the defendant's home; the defendant showed each victim pornographic material; each crime involved deviate sexual intercourse; and, in each case the defendant instructed the victims not to tell anyone. Id. at 970.

## DISCUSSION

Using the language of Aikens, supra., the issue here is whether there are "matching characteristics [that] elevate the incidents into a unique pattern that distinguishes them from a typical or routine child-abuse factual pattern;" or, whether the similarities between the two allegations is "confined to insignificant details that would likely be common elements regardless of who committed the crimes." There are similarities between the Defendant's alleged conduct toward KRS and the current victim. First, the two were roughly the same age when the Defendant made sexual advances toward them. KRS was 15 or 16 when she first met the Defendant, she was approximately 17 when he made advances toward her, and, the victim was 15 when the Defendant sexually assaulted her. The Defendant provided marijuana to both girls and "partied" with them before making sexual advances toward them. However, the specific similarities were much greater in Aikens and O'Brien, supra. The Defendant here did not

isolate KRS and the victim under almost identical manner in order to assault them (Aikens: visits with daughters and then showed them pornographic material at his home; O'Brien: befriended victims parents showed them pornographic material in his home). Therefore, the Court was inclined to conclude that a "unique fact pattern" did not exist here and any similarities between the two alleged incidents were common elements that would exist regardless of who committed the crimes.

However, the Defendant's alleged statements to each victim are extremely probative on the "common plan or scheme" issue. The Defendant told KRS, both directly and through his actions, that he was upset with her because "he did so much for me like take me fishing and smoke weed with me and buy me things;" and, "for payment of all that stuff he did for me that I should repay him with sex." The current victim asserts that the Defendant told her that he "was always doing things for her" and that she should do something for him and have sex with him. When the victim told him no the defendant persisted repeating that "he does stuff for her and she should repay him." These statements are extremely important to this analysis because, if proven, they are an actual admission of a common plan or scheme. When the Defendant's statements are considered with the other facts a clear plan and scheme emerges. The Court finds that the Defendant had a plan to party with KRS and the victim, to give them marijuana, to take them fishing and befriend them in return for sex because the Defendant said that that was what his plan was. He told both KRS and the victim that he had put a lot of work into his plan and was upset when it did not appear as if his efforts were going to yield the results he had been working for. It is immaterial that the pressure he put on KRS did not result in the Defendant obtaining his planned goal. The issue is whether the Defendant utilized

a common plan in both instances, not whether the plan yielded the result the Defendant wanted in both cases. The Defendant is the best source to know whether he had a common plan and scheme here. The fact that he said that there was cannot be ignored. Therefore, we enter the following:

COMMONWEALTH OF PENNSYLVANIA,

Plaintiff

vs.

JEFFREY S. PINCHOCK,

Defendant.

IN THE COURT OF COMMON PLEAS

OF McKEAN COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

NO. 225 C.R. 2013

## ORDER

AND NOW, this 25th day of November, 2013, the Commonwealth's Motion *in limine* is granted and the Commonwealth is permitted to present the testimony of KRS discussed in the Opinion filed contemporaneously with this order regarding prior conduct.

BY THE COURT:

JOHN H. PAVLOCK
PRESIDENT JUDGE

CC: DA
PD
(11-26-13)

COMMONWEALTH OF PENNSYLVANIA,

          Plaintiff

    vs.

JEFFREY SCOTT PINCHOCK,

          Defendant.

IN THE COURT OF COMMON PLEAS

OF McKEAN COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

NO. 225 C.R. 2013

---

    DA Raymond Learn, Esq.               **For the Plaintiff**

    Stephanie L. Vettenburg-Shaffer, Esq.     **For the Defendant**

---

## OPINION AND ORDER

Defendant Jeffrey Pinchock was charged with Statutory Sexually Assault (F1), Sexual Assault (F2), Corruption of Minors-Sexual Nature (F3), Corruption of Minors (M1), and Indecent Assault (M2).[1] The matter was tried before a jury. The Defendant was found not guilty of Statutory Sexual Assault (F1), Sexual Assault (F2), and Corruption of Minors-Sexual Nature (F3). The Defendant was found guilty of Corruption of Minors (M1) and Indecent Assault (M2). Defendant filed a post-trial motion and the motion was denied.

By order dated February 13, 2014, the Court ordered the Sexual Offender Assessment Board ("SOAB") to conduct a sexually violent predator ("SVP") assessment of the Defendant. A hearing was held on October 17, 2014. The matter is now ready for a decision.

---

[1] Count 1: Statutory Sexual Assault, 18 Pa. C.S. § 3122.1, Felony 1st Degree; Count 2: Sexual Assault, 18 Pa. C.S. 3124.1, Felony 2nd Degree; Count 3: Corruption of Minors of Sexual Nature, 18 Pa. C.S. § 6301(a)(1)(ii), Felony 3rd Degree; Count 4: Corruption of Minors, 18 Pa.C.S. § 6301(a)(1)(ii), Misdemeanor 1st Degree ; Count 5: Indecent Assault, 18 Pa.C.S. § 3126(a)(1), Misdemeanor 2nd Degree.

(20)

## APPLICABLE AUTHORITY

As set forth in 42 PA C.S.A. § 9799.24, the Commonwealth may pursue a hearing where the Court will determine if the defendant shall be classified as a sexually violent predator. The hearing shall be scheduled upon praecipe filed by the District Attorney. The District Attorney upon filing the praecipe shall serve a copy of same upon defense counsel together with a copy of the report by the SOAB.

Upon receipt from the court of an order for an assessment, a member of the board as designated by the administrative officer of the board shall conduct an assessment of the individual to determine if the individual should be classified as a sexually violent predator. The board shall establish standards for evaluations and for evaluators conducting the assessments. An assessment shall include, but not be limited to, an examination of the following:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

2

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.

(ii) Use of illegal drugs.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of re-offense.

42 Pa. Cons. Stat. Ann. § 9799.24.

The question for a court analyzing a SVP allegation is whether the Commonwealth's evidence, including the state assessment board's assessment, shows that the person convicted of a sexually violent offense has a mental abnormality or disorder making that person likely to engage in predatory sexually violent offenses. Commonwealth v. Brooks, 7 A.3d 852, 860 (2010).

With regard to the various statutory assessment factors for classification of an SVP mentioned above, there is no statutory requirement that all of them or any particular number of them be present or absent in order to support an SVP designation. Id. After conducting a hearing and considering the evidence presented, the court decides whether a defendant should be designated an SVP and thus made subject to the registration requirements in 42 Pa. C.S.A. § 9799.15. Id. at 863.

3

"An SVP assessment is not a trial or a separate criminal proceeding that subjects the defendant to additional punishment." Commonwealth v. Howe, 842 A.2d 436, 445–46 (2004). "SVP status, therefore, does not require proof beyond a reasonable doubt; the court decides SVP status upon a show of clear and convincing evidence that the offender is, in fact, an SVP." Commonwealth v. Killinger, 888 A.2d 592, 600 (2005).

## DISCUSSION

Defendant Pinchock was convicted of Corruption of Minors (M1) 18 Pa.C.S. § 6301(a)(1)(ii) and Indecent Assault (M2) 18 Pa.C.S. § 3126(a)(1) on December 10, 2013. Both offenses are equivalent to what is called a Tier 1 offense. An individual convicted of a Tier I sexual offense, except an offense set forth in Section 9799.14(b)(23) (relating to sexual offenses and tier system), shall register for a period of 15 years with the Pennsylvania State Police ("PSP"). If a person is found to be a sexually violent predator, they must register with the PSP for life.

As stated above, the Court must decide whether the defendant is an SVP. The Court has to review the Commonwealth's evidence and may consider the report of the SOAB. The Commonwealth's expert, Brenda Mano, has substantial expertise regarding SVP evaluations. She has been a SOAB Board member since 1998 and has had extensive schooling and training[2] in psychology, sociology, licensed social work, assessing sexual offenders, child abuse, ethical issues in the assessment of sexual offenders, advanced forensic interviews training, the psychology of criminal sexuality, and ethics concerns in sex offender commitment in the Commonwealth of Pennsylvania. Ms. Mano has been qualified as an expert and has done

---

[2] Examples under training section for Brenda A. Manno MSW, LCSW (Comm. Exhibit 2).

4

approximately 1,401 assessments of which 925 for SVP and the remaining for pre-parole assessments. However, the court must make the determination whether the Defendant meets the requirements for SVP status and cannot blindly accept any expert's conclusions on this issue.

In this case, numerous concerns were raised regarding Ms. Mano's opinion. For example, despite the fact a trial transcript was readily available on January 2, 2014, she did not review it and instead reviewed the preliminary hearing transcript. Further, she incorrectly concluded that the Defendant had been convicted of corruption of a minor of a sexual nature when in fact the Defendant was not convicted of this offense. Therefore, factually she had concluded that the Defendant had sexual intercourse with the victim when the jury rejected this assertion.[3] Ms. Manno stated that, considering all the correct information regarding what the Defendant was found guilty of, etc., it would not change her opinion of the classifying the Defendant as an SVP.

The concerns regarding the basis for Ms. Manno's conclusions/opinion initially caused the Court hesitation. However, after a review of the known facts in this case the Court finds that the Defendant is a Sexually Violent Predator. The Defendant does have a prior criminal history that involved crimes of a sexual nature. He pled guilty to Count 1: Statutory Sexual Assault 18 Pa. C.S. § 3122.1 and Count 2: Corruption of Minors 18 Pa.C.S. § 6301(a)(1)(ii) in 1997.[4] Therefore, he has a clear pattern of victimization that suggests that he could be a danger to others and specifically to young girls who are under the age of 18. A consideration of the facts of his

---

[3] By convicting the Defendant of counts of Corruption of Minors (M1) 18 Pa.C.S. § 6301(a)(1)(ii) and Indecent Assault (M2) 18 Pa.C.S. § 3126(a)(1), the Jury concluded that the Defendant had inappropriately touched the victim for sexual gratification but rejected the assertion that sexual intercourse had occurred.

[4] There is no record that the Defendant received any treatment as part of his sentence for his 1997 convictions.

current and previous convictions reveal that the Defendant uses his influence to obtain sexual favors. He developed a friendship and trust with the victims and offered them marijuana to persuade them to go along with his requests. Further, the Court accepts Ms. Manno's opinion that the Defendant has a congenital or acquired condition which is the impetus to the sexual offending that he takes part in, and this is a lifetime condition. The Court finds that the Defendant has a very high likelihood of re-offending.

Therefore, the Commonwealth has proven the defendant is a sexually violent predator by clear and convincing evidence. Pa. C.S.A. 9799.24(e). Although Ms. Manno's report was inaccurate in some respects, the Court still accepts Ms. Manno's opinion as accurate. "The SOAB merely assesses the defendant; it does not perform an adjudicative function." Commonwealth v. Prendes, 97 A.3d 337, 357 (2014) citing Commonwealth v. Kopicz, 840 A.2d 342, 351 (2003). In Prendes, the Superior Court held:

> [A]n SOAB expert assessment falls under the general rules regarding expert witnesses and may be based on facts or data that the expert has been made aware of or personally observed, so long as experts in the particular field reasonably rely on those kinds of facts or data in forming an opinion on the subject; the facts or data consulted need not be admissible or proved beyond a reasonable doubt in order to find the expert opinion admissible.

Prendes, 337 at 363.


**WHEREFORE, we enter the following:**

6

COMMONWEALTH OF PENNSYLVANIA,       IN THE COURT OF COMMON PLEAS

           Plaintiff                 OF McKEAN COUNTY, PENNSYLVANIA

vs.                            CRIMINAL DIVISION

JEFFREY SCOTT PINCHOCK ,         NO. 225 C.R. 2013

           Defendant.

## ORDER

AND NOW this _21st_ day of November, 2014, upon consideration of the Defendant and

Commonwealth's briefs following the hearing on Sexually Violent Predator Status as well as the

Opinion filed contemporaneously with this Order, the Court ORDERS the following:

1. The Commonwealth has met its burden and the Defendant is classified as a

Sexually Violent Predator.

BY THE COURT:

_____
JOHN H. PAVLOCK, P.J.

cc: DA
PD
Prob
(11-24-14)

2014 NOV 24 AM 9: 15

MCKEAN COUNTY PROTHONOTARY
AND CLERK OF COURTS

7