J-A23026-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
CRUZ MANUEL ROQUE PABON :
:
Appellant : No. 67 MDA 2021

Appeal from the Judgment of Sentence Entered November 25, 2020
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0006591-2019

BEFORE:   BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED OCTOBER 01, 2021**

Appellant, Cruz Manuel Roque Pabon, appeals from the judgment of

sentence of 2-4 years' incarceration, imposed after a jury found him guilty of

possession with intent to deliver a controlled substance (heroin) ("PWID"), 35

P.S. § 780-113(a)(30).  Herein, Appellant argues that his identification as the

perpetrator of the PWID offense was against the weight of the evidence.  After

careful review, we affirm.

The trial court summarized the facts adduced at trial as follows:

On June 10, 2019, Detective Vincent Monte ("Det. Monte") of the
York City Police Department, an assigned member of the York
County Drug Task Force[,] met with a cooperating source[]
(hereinafter "[the] Source").  The Source informed Det. Monte
that they knew a person who would be willing to sell them a
quantity of heroin.  Det. Monte asked the Source to call the
individual in his presence, which the Source did.  The Source

---

[*] Former Justice specially assigned to the Superior Court.

dialed a phone number, placed the call on speaker, and had a conversation with a male in the Spanish language.

After the call terminated, the Source told Det. Monte that they had placed an order for heroin[] and were waiting for a location for the transaction to take place. A few minutes later[,] the Source's phone rang. The incoming call originated from the same number the Source had dialed in Det. Monte's presence with the same male voice speaking from the other side of the line. The Source placed the call on speaker and was instructed by the male caller that the drug sale would occur around the area of Princess and Queen Streets in York City in the parking lot of the Big Wash Laundromat.

Prior to the drug transaction, Det. Monte enlisted Detectives Cody Myers ("Det. Myers") and Noel Velez ("Det. Velez"), both employed by the York County District Attorney's Office, and assigned members of the York County Drug Task Force to participate in the investigation.

Before proceeding to the buy location, Det. Monte searched the Source for anything on their person that may have tainted the investigation; upon search, the Source did not possess anything on their person that would have tainted the investigation. Simultaneously, Det. Myers searched the Source's vehicle for any pre[-]existing illegal narcotics that may have tainted the ongoing investigation[.] Det. Myers did not find anything of concern in the Source's vehicle. Following the search of the Source's person and vehicle, the Source was provided with $100 in U.S. currency … so that the Source could purchase the heroin.

Det. Monte then dispatched Det. Myers and Det. Velez to set up in surveillance positions ahead of the anticipated drug transaction. Det. Myers position[ed] himself at the intersection of Princess Street and Queen Street. Det. Velez was positioned in the parking lot of the Sun's Deli, which is just north of the location for the anticipated transaction at the Big Wash Laundromat.

After providing Det. Myers and Det. Velez a head start, Det. Monte and the Source departed their location, proceeding in separate vehicles, to the Big Wash Laundromat for the anticipated transaction. Det. Monte followed the Source to the buy location. Both vehicles proceeded in an eastward direction down Princess Street from their originating location towards the Big Wash Laundromat. The Source pulled into the parking lot, which Det. Monte relayed by radio to Det. Myers and Det. Velez. Det. Velez

radioed back that he had a visual of the Source from his surveillance location, causing Det. Monte to proceed eastward down Princess Street.

Det. Velez observed the Source pull into the parking lot at the Big Wash Laundromat and park his vehicle. Velez then observed a Hispanic male walk towards the Source's vehicle and enter[] the front passenger's seat of the vehicle. As a part of the surveillance mission, Det. Velez took a photo of the man who walked to[,] and entered[,] the Source's vehicle. The Source's vehicle then began to back out of the parking spot it had occupied [and] pulled onto Queen Street proceeding northbound. At this time, Det. Monte alerted Det. Myers and Det. Velez that he had a visual of what was taking place. Det. Monte then began to follow the Source's vehicle with Det. Velez remaining where he had been stationed.

The Source proceeded northbound on Queen Street[,] performed a right[-]hand turn upon entering the intersection with King Street[,] and then pulled over the vehicle just after the intersection. The male passenger then exited the front passenger seat and walked off. The man then walked to King Street in a direction towards Det. Monte, who was able to observe the individual as he walked. The Source then drove his vehicle back to a predetermined safe location, followed by Det. Monte.

Upon arrival [at] the safe location[,] the Source provided Det. Monte with a quantity of heroin that had been purchased from the male passenger picked up at the Big Wash Laundromat. Det. Monte then performed a second search of the Source's person and vehicle, which did not turn up any buy money, other drugs[,] or contraband. Det. Monte then packaged the heroin into an evidence envelope and later sent them to the Pennsylvania State Police Laboratory where tests on the substance [were] performed. The Pennsylvania State Police Bureau of Forensic Services returned a report that found the substance turned over by the source to be the controlled substance heroin with a 99% probability match.

On June 11, 2019, Det. Monte returned to the parking lot of the Big Wash Laundromat to take photographs. While at the scene, Det. Monte observed the man who had participated in the drug transaction the day before and took several photos of the man and general area.

Trial Court Opinion ("TCO"), 3/9/21, at 2-6 (citations omitted).

At the conclusion of Appellant's two-day jury trial that began on September 14, 2020, the jury convicted Appellant of PWID. The trial court sentenced him to 2-4 years' incarceration on November 25, 2020. Appellant filed a timely post-sentence motion wherein he alleged that "the weight of the evidence was against his conviction regarding [PWID] due [to] a lack of evidence regarding the identity of the individual involved in the drug transaction." Appellant's Post-Sentence Motion, 12/7/20, at ¶ 14 (unnumbered pages). The court denied the post-sentence motion on December 9, 2020.

Appellant filed a timely notice of appeal, and a timely, court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued its Rule 1925(a) opinion on March 9, 2021. Appellant now presents the following question for our review: "Whether the weight of the evidence was against [Appellant]'s conviction where his identity was not established beyond a reasonable doubt as the person who made the alleged transfer of a controlled substance?" Appellant's Brief at 4.

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Widmer*, 744 A.2d 745, 751–52 (Pa. 2000); *Commonwealth v. Brown*, 648 A.2d 1177, 1189 (Pa. 1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. *Widmer*, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Id.* … (citation omitted). It has often been stated that "a new trial should be awarded when the jury's

verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Brown*, 648 A.2d at 1189.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. *Id.* Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. *Commonwealth v. Farquharson*, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Widmer*, 744 A.2d at 753 (emphasis added).

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

> The term "discretion" imports the exercise of judgment, wisdom[,] and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice[,] or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Widmer*, 744 A.2d at 753 (quoting *Coker v. S.M. Flickinger Co.*, 625 A.2d 1181, 1184–85 (Pa. 1993)).

*Commonwealth v. Clay*, 64 A.3d 1049, 1054–55 (Pa. 2013) (citations reformatted).

Appellant's claim solely concerns the weight of the evidence as it pertains to his identity as the perpetrator of the PWID offense. As this Court has previously stated:

> "In addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes." *Commonwealth v. Brooks*, 7 A.3d 852, 857 (Pa. Super. 2010)…. "Evidence of identification need not be positive and certain to sustain a conviction." *Commonwealth v. Orr*, 38 A.3d 868, 874 (Pa. Super. 2011) (*en banc*) (citation omitted)…. As our Supreme Court has stated[,] "any indefiniteness and uncertainty in the identification testimony goes to its weight. Direct evidence of identity is, of course, not necessary and a defendant may be convicted solely on circumstantial evidence." *Commonwealth v. Hickman*, … 309 A.2d 564, 566 ([Pa.] 1973) (citations omitted).

*Commonwealth v. Smyser*, 195 A.3d 912, 915 (Pa. Super. 2018).

In the case *sub judice*, the trial court determined that the identification of Appellant as the perpetrator was not against the weight of the evidence and, consequently, that Appellant's conviction for PWID did not shock the conscience of the court. The court stated that Appellant

> was identified as the person who delivered the cocaine to the confidential source by Detectives Monte and Velez. The detectives were members of the taskforce present on the scene who witnessed [Appellant] during the drug transaction. In addition, the Commonwealth presented Commonwealth's Exhibits 4-9 to the jury, which were photos of [Appellant] … at the scene on the day of the drug transaction, photos of [Appellant] at the scene the day after the transaction, and photos of [Appellant]'s mug shot and identifying tattoos. Although [Appellant]'s face could not be

seen in the photos at the scene of the transaction, his tattoos were visible in the photos.

TCO at 9-10. The court determined that the "weight of the testimony of the two identifying witnesses in conjunction with the photographs of [Appellant] at the scene supports the jury's verdict and does not shock one's sense of justice." *Id.* at 11.

Appellant contends that the trial court abused its discretion in reaching this conclusion. He first argues that "neither Detectives Monte nor Velez had direct contact with the suspect[,] and both only observed the suspect for a few seconds from a distance." Appellant's Brief at 14. Second, he notes that the suspect was not detained "on the incident date nor the subsequent day when Detective Monte claimed he observed the same person near the location where the alleged delivery occurred." *Id.* He posits that the "only evidence of identity, direct or circumstantial, came from the [Source] through the testimony of Detectives Monte and Velez, and photographs that may not represent the same person." *Id.* at 14-15.

Appellant further argues that:

The only identifying information the [Source] provided to Detective Monte prior to the controlled buy was that the suspect's nickname was "Junior," and he was a Hispanic male in his thirties or forties. Detective Monte testified that he did not know [Appellant]'s name prior to June 10, 2019, and that he did not confirm [Appellant]'s identity until the latter was arrested nearly three months after the incident. The [Source] never identified [Appellant] as the person who delivered drugs to him, there was no evidence [that Appellant] was known as "Junior," and the marked recorded funds and bundle of heroin were not traced back to [Appellant].

Furthermore, Detective Monte testified that he did not understand the conversation between the [Source] and the man on the phone, as he does not speak Spanish. The telephone number the [Source] dialed belonged to an unknown woman in Cumberland County, Pennsylvania. Detective Monte never spoke to the woman to determine if she knew [the Source] or if anyone else might have used her phone on June 10, 2019. Nor did the Commonwealth proffer any evidence [that Appellant] spoke Spanish.

When considering the evidence as a whole, other than Detective Monte's opinion[] that [Appellant] was the person in the photograph taken on the incident date, and his in-court identification, based on a brief observation of a Hispanic man exiting the [Source]'s vehicle, the greater weight of the evidence does not link [Appellant] to the offense. Rather, the evidence established the suspect could have been any one of the multiple drug dealers that did business at the "open-air drug market" at which the police took the photographs. As such, the evidence is not of great enough weight to establish beyond a reasonable doubt that [Appellant] was the person who delivered heroin to the [Source]. [*See*] ***Commonwealth v. Muniem***, 303 A.2d 528, 529 (Pa. Super. 1973) ("[E]vidence to convict an accused of a crime must be something more than evidence that merely raises a suspicion of guilt. The inference of guilt must be based on facts and conditions proved; mere conjecture or surmise is not sufficient."); ***see also Commonwealth v. Bausewine***, 46 A.2d 491, 493 (Pa. 1946).

The photographs do not establish that [Appellant] was on the scene during the controlled buy on June 10, 2019, nor do they establish that he transferred a controlled substance. After presenting photographs purporting to show [Appellant] around the area of the laundromat, the Commonwealth then presented photographs taken by Detective Monte the next day, on June 11, 2019, apparently in the same location, of a man with a similar complexion. In the second photograph, but not the first, the man in the photograph is seen with short sleeves and visible tattoos. The Commonwealth then presented photographs of [Appellant], taken at the time of his arrest, showing the same tattoos as the person who was photographed on June 11, 2019, the day after the alleged transfer.

The Commonwealth attempted to establish the identification of [Appellant], based on the in-court identification, which was based

- 8 -

on an observation that lasted a few seconds from a distance of "three or four house lengths," and [Appellant]'s complexion, build, and tattoos, as reflected in the photographs. The photographic evidence, relying on his tattoos, build and skin color, only connects him to scene on June 11, 2019, rather than on the date of alleged transaction, and the testimony of Detective Monte connecting [Appellant] to the photograph taken on June 10, 2019, is infirm due to its duration and distance.  Furthermore, the detective who took the photo on June 10, 2019, never identified [Appellant] in court.  Therefore, the weight of the evidence failed to establish his identity beyond a reasonable doubt[,] which is a requirement for [a] conviction.

*Id.* at 15-17 (citations and footnote omitted).

After careful review of the record, we conclude that Appellant has failed to meet the high burden of demonstrating that his identification as the perpetrator of the PWID was against the weight of the evidence.  At trial, Detective Monte identified Appellant as the person who got into the vehicle with the Source on June 10, 2019.  N.T., 9/14/20-9/15/20, at 118, 137.  He had observed Appellant from about "three or four house lengths" away.  *Id.* at 119.  Detective Monte was able to see Appellant for "a few seconds[,]" in the middle of the afternoon, and in normal weather conditions.  *Id.* at 120. When shown the photograph taken by Detective Velez on June 10, 2019 (Commonwealth's Exhibit #4), Detective Monte identified Appellant as the individual depicted, and as the person he saw getting into the vehicle with the Source.  *Id.* at 125-27.   Detective Monte also authenticated Commonwealth's Exhibits #5 and #6, photos Detective Monte took on June 11, 2019, at the same location, and he testified that that Appellant was again depicted in those photos.  *Id.* at 128-30.  Detective Monte indicated that Commonwealth Exhibit

#6 depicted two tattoos on the subject's left arm, one on the outside of the bicep, and one just above the wrist. *Id.* at 130. Three additional photos (Commonwealth's Exhibits #7, #8, and #9) were entered into evidence with a stipulation by the defense that they depicted Appellant. *Id.* at 130-31. Detective Monte testified that Appellant's tattoos, as depicted in Commonwealth's Exhibits #8 and #9, were similar in appearance to those seen on Commonwealth's Exhibit #6. *Id.* at 132.

Although Detective Monte was the only witness to identify Appellant in court, Appellant's identification as the perpetrator of the PWID offense was not solely contingent upon Detective Monte's in-court identification. Detective Velez took a photograph of the person who got into the vehicle with the Source immediately prior to when the Source purchased the contraband. *Id.* at 175-76. The jury was therefore able to compare that photograph to Appellant's in-court appearance and to his appearance in the photo to which he stipulated. Additionally, although Appellant argues that the photos taken on June 11, 2019, may not have been of the same person identified who committed the offense on the previous day, the jury was able to compare the photos from both days and make their own assessment as to whether the individual depicted was the same person. Thus, there was ample evidence upon which the jury could rely in reaching a verdict regarding Appellant's identity as the perpetrator above and beyond Detective Monte's testimony.

Moreover, Appellant's assertion that the identity evidence was outweighed by the evidence that Appellant was not the perpetrator is specious

and belied by the record. There was no evidence pointing toward another suspect. There was, at best, some small possibility that Appellant was misidentified, but no evidence tending to support that conclusion,[1] unless the jury simply discredited Detective Monte's testimony and/or determined that Appellant was not depicted in Commonwealth's Exhibits #4 through #6. However, we observe no basis in the record to conclude that it should have shocked the conscience of the trial court for the jury to have found Detective Monte's in-court identification of Appellant credible in conjunction with the photographic evidence.[2] Accordingly, we conclude that the trial court did not abuse its discretion in denying Appellant's weight-of-the-evidence claim.

Judgment of sentence **affirmed**.

_____

[1] Appellant argues that the Detective Monte might have mistaken Appellant for one of the other drug dealers who operated near the parking lot of the Big Wash Laundromat. However, there was no evidence presented tending to demonstrate that any other dealers from that location resembled Appellant to the extent that it undermined Detective Monte's credibility. Thus, this theory is pure speculation that should have been afforded little weight by the trial court in rejecting Appellant's weight-of-the-evidence claim.

[2] Our own review of the photos does not suggest any obvious reason to believe that Appellant is not the person depicted in Exhibits #4 through #6, when compared to the Exhibit #7 (which Appellant conceded was of him). We instead conclude that any observable discrepancies in Appellant's appearance were well-within the jury's province to resolve as the fact-finder.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/01/2021