J-S35028-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL R. WRIGHT | : | |
| | : | |
| Appellant | : | No. 721 MDA 2022 |

Appeal from the Judgment of Sentence Entered April 12, 2022
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0004282-2018,
CP-22-CR-0004739-2018

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McLAUGHLIN, J.: **FILED: DECEMBER 16, 2022**

Michael R. Wright appeals from the judgment of sentence imposed after he pled guilty to two counts each of rape, involuntary deviate sexual intercourse (IDSI), and sexual assault, and one count each of terroristic threats, aggravated assault, and false imprisonment.[1] Wright's counsel has filed an **Anders**[2] brief and petition to withdraw as counsel. We affirm Wright's judgment of sentence and grant counsel's request to withdraw.

Wright pleaded guilty on May 5, 2021, pursuant to a plea agreement. The prosecutor gave the following factual basis for the plea agreement:

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3121(a)(2), 3123(a)(1), 3124.1, 2706(a)(1), 2702(a)(1), and 2903(a), respectively.

[2] **Anders v. California**, 386 U.S. 738 (1967).

Factually, Your Honor, at Docket Number 4739 CR 2018, it's alleged by the Commonwealth that the defendant did meet the named victim . . . outside of an establishment in downtown, specifically the Harrisburg Midtown Arts Center, about 2:00 in the morning.

The defendant did invite her to go over to a residence in the city at 625 Oxford Street. Once they went into the home, the defendant demanded that she perform oral sex on him. She said no. And he then forcibly put his penis inside of her mouth. He then also vaginally raped her.

During the course of both the involuntary deviate sexual intercourse as well as the vaginal intercourse, the defendant punched the victim multiple times in the head. It's the Commonwealth's allegation that he did cause serious bodily injury to the victim.

She was ultimately able to crawl outside of the apartment and was able to run for help. She was actually helped by an individual that was driving through the area.

She was transferred to the Hershey Medical Center and she did have a brain hemorrhage as a result of the beating by the defendant. She also had a fracture to the right eye.

\*\*\*

Your Honor, the second docket is Docket 4282 CR 2018. And actually what happened, Your Honor, was this predated the one that I just went through. When the defendant was arrested for this rape, another woman came forward -- . . . -- she had indicated that she had also been sexually assaulted by the defendant and she had seen his picture on the news. She didn't know his name. She hadn't reported it to the police at the time.

Ultimately, the police investigation determined that on May 25th of 2018 the defendant had been in contact with [the victim]. They had met at a bar. They had gone back to a residence within the city. And then the defendant forced her to engage in both vaginal intercourse as well as oral intercourse.

N.T., Guilty Plea Hearing, 5/5/21, at 5-6, 6-7. Wright waived his right to have a Sexually Violent Predator ("SVP") determination before sentencing and the court imposed an aggregate term of 15 to 39 years' incarceration. The court held an SVP hearing on April 12, 2022.

The Commonwealth presented the testimony of Dr. Robert Stein. Dr. Stein testified that he determined Wright to be an SVP. N.T., SVP Hearing, 4/12/22, at 11. He testified that Wright did not participate in the evaluation and that he based his determination on Wright's Sexual Offender Assessment Board ("SOAB") file. *Id.* at 6. Dr. Stein reviewed 15 statutory factors and testified to the factors that were relevant to his determination of Wright's SVP status.

> The factors that were relevant were Factor Number 1, because the offense involved multiple victims indicating greater practice and risk taking than a single victim. Factor Number 2 was relevant. And he did exceed the means necessary with significant physical violence against both victims, with the second victim incurring severe injuries. The third was relevant as well. Act[s] with both victims included forced oral and penis-vagina sex consistent with an antisocial pattern, as opposed to offenses that might involve brief sexual touching.
>
> Next, the relationship of the individual victim, this was also relevant as both victims were strangers. This is consistent with predatory behavior. Next, the issue of unusual cruelty was relevant with the second victim suffering severe physical injuries, a brain hemorrhage and facial fracture indicating some level of cruelty.
>
> The prior criminal record was relevant because there was a lengthy criminal history that's consistent with an antisocial orientation.

The next, having completed any prior sentences, that was relevant because there was a history of multiple probation violations also consistent with an antisocial orientation.

The issue of mental disability could be relevant. I'm not going to say necessarily is. He does have an intellectual disability. That could create difficulties in treatment, though not necessarily. I'm not going to hold that against him.

Next, overall behavioral characteristics contributing to conduct, the antisocial history is consistent with an antisocial personality disorder. It appears that frequency of criminal convictions has increased over the past eight years, starting in 2013.

And finally, statistical factors related to risk of sexual re-offense. Having a nonsexual violent offense as part of the sexual offense pattern, having unrelated victims, stranger victims, and a history of four or more sentencing dates, all of these are statistically associated with greater risk of sexual re-offense.

*Id.* at 9-10.

Dr. Stein also testified that Wright suffered from antisocial personality disorder. He stated that Wright's behavior towards the victim was predatory. *Id.* at 11. Dr. Stein conceded that there was a possibility Wright's behavior could change "if he successfully completes treatment in prison and successful completes outpatient treatment while under supervision, that would lower his risk of recidivism." *Id.* at 13. He testified that some factors in Wright's favor were that the victims were close to his age and were of normal intellectual capacity. *Id.* at 16. He maintained, however, that these factors did not change his opinion regarding Wright being classified as an SVP. *Id.* at 18. After Dr. Stein's testimony, the court determined Wright to be an SVP. *Id.* at 19. This timely appeal followed.

- 4 -

Wright improperly filed one notice of appeal listing two docket numbers, in violation of **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018). Normally this would result in quashal or in this Court directing counsel to file separate notices of appeal. However, we decline to do so here, as we find that a "breakdown in court operations" occurred. **See Commonwealth v. Stansbury**, 219 A.3d 157, 160 (Pa.Super. 2019) (declining to quash appeal for **Walker** violation due to breakdown in court operations where appellant filed one notice of appeal listing multiple trial court docket numbers, after court advised appellant that he had a right to file "a notice of appeal").

The written plea colloquy form here contained a provision stating that Wright understood that he had 30 days "to file **an** appeal[.]" **See** Guilty Plea Colloquy, dated 5/5/21, at 4 (unpaginated) (emphasis added). As in **Stansbury**, Wright's colloquy misled him to believe that filing "an appeal" would be proper. We therefore we decline to quash. **See Stansbury**, 219 A.2d at 160; **see also Commonwealth v. Larkin**, 235 A.3d 350, 354 (Pa.Super. 2020) (*en banc*) (declining to quash appeal where order informing appellant of appellate rights stated he had 30 days to file "an appeal").

We now turn to our evaluation of counsel's **Anders** brief and petition to withdraw.[3] Before we assess the merits of Wright's claim, we must first address counsel's request to withdraw from representation. **See Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa.Super. 2007) (*en*

---

[3] Wright has not filed a response to the **Anders** brief.

*banc*). An ***Anders*** brief is filed "when counsel believes an appeal is frivolous and wishes to withdraw from representation[.]" ***Commonwealth v. Watts***, 283 A.3d 1252, 1254 (Pa.Super. 2022). In such a case, counsel must:

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record, counsel has determined the appeal would be frivolous; (2) file a brief referring to any issues that might arguably support the appeal, but which does not resemble a no-merit letter; and (3) furnish a copy of the brief to the defendant and advise him of his right to retain new counsel, proceed *pro se*, or raise any additional points he deems worthy of this Court's attention.

***Commonwealth v. Edwards***, 906 A.2d 1225, 1227 (Pa.Super. 2006) (citation omitted).

Additionally, an ***Anders*** brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009). If this Court determines that counsel has satisfied the requirements, we then conduct "a full examination" of the record "to decide whether the case is wholly frivolous." ***Commonwealth v. Dempster***, 187 A.3d 266, 271-72 (Pa.Super. 2018) (*en banc*) (quoting ***Anders***, 386 U.S. at 744).

Here, counsel has satisfied the preliminary requirements. In the **Anders** brief, counsel provides a summary of the procedural and factual history with citations to the record, refers to three issues "that might arguably support the appeal," and states that these issues are frivolous. The issues are the voluntariness of Wright's guilty plea and the sufficiency and weight of the evidence supporting the SVP determination. Counsel's petition to withdraw states that counsel served a copy of the **Anders** brief on Wright and advised him that he may raise any additional issues before this Court *pro se* or through private counsel. The letter to Wright is an exhibit to counsel's petition to withdraw. The **Anders** brief meets the procedural requirements. We now review the appeal for frivolousness.

"When an appellant enters a guilty plea, []he waives h[is] right to 'challenge on appeal all non-jurisdictional defects except the legality of h[is] sentence and the validity of h[is] plea.'" **Commonwealth v. Pantalion**, 957 A.2d 1267, 1271 (Pa.Super. 2008) (quoting **Commonwealth v. Rush**, 909 A.2d 805, 807 (Pa.Super. 2006)) (brackets omitted). Issues challenging the validity of a guilty plea must be raised before the trial court, either in a post-sentence motion or at the sentencing hearing. **Commonwealth v. Tareila**, 895 A.2d 1266, 1270 n.3 (Pa.Super. 2006). Failure to raise the issue properly in the trial court waives the issue on appeal. **Id.**

Here, Wright did not object or otherwise raise any issue related to the voluntariness of his guilty plea at the time of his plea and sentencing. Nor did Wright file a post-sentence motion challenging his plea or seeking to withdraw

it. Therefore, he did not preserve any issue related to the validity of his guilty plea. **See id.** We find no reasonable basis on which to argue in this appeal that the plea was not voluntary.

"In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is an SVP." **Commonwealth v. Hollingshead**, 111 A.3d 186, 189 (Pa.Super. 2015) (citation and brackets omitted). "[W]e view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth." **Id.** (citation omitted).

"An SVP is defined as a person who has been convicted of a sexually violent offense . . . and who has a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses." **Id.** (citation and brackets omitted). An SVP designation also requires "a showing that the defendant's conduct was predatory[.]" **Id.** at 190 (citation omitted). Furthermore, when conducting an SVP assessment, the mental health professional reviews 15 factors:

> [w]hether the offense involved multiple victims[; w]hether the defendant exceeded the means necessary to achieve the offense[; t]he nature of the sexual contact with the victim[s; r]elationship of the individual to the victim[s; a]ge of the victim[s; w]hether the offense included a display of unusual cruelty by the [defendant] during the commission of the crime[; t]he mental capacity of the victim[s; t]he [defendant's] prior criminal record[; w]hether the [defendant] completed any prior sentences[; w]hether the [defendant] participated in available programs for sexual offenders[; the defendant's a]ge[; the defendant's u]se of illegal drugs[; a]ny mental illness, mental disability, or

- 8 -

> mental abnormality [of the defendant; b]ehavioral characteristics that contribute to the [defendant's] conduct[; and f]actors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9799.24(b)(1)-(4). The law does not require that all the above-referenced factors go against the defendant, or any particular number of them, in order to support an SVP designation. **See Commonwealth v. Brooks**, 7 A.3d 852, 863 (Pa.Super. 2010).

To the extent Wright challenges the weight of the evidence supporting his SVP designation, this claim is waived, as Wright made no such challenge below. **See** Pa.R.Crim.P. 607, comment ("The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived"); **see also Commonwealth v. Ratushny**, 17 A.3d 1269, 1272 (Pa.Super. 2011) ("We discern no basis on which to distinguish our standard of review on weight claims, whether challenging the weight of the evidence to support a guilty verdict or a trial court's SVP determination").

Regarding Wright's challenge to the sufficiency of the evidence for his SVP designation, "we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth." **Hollingshead**, 111 A.3d at 189. When we review the evidence under this standard, we perceive no reasonable basis on which to challenge the trial court's designation of Wright as an SVP. The evidence included not only the evidence of Wright's anti-social personality disorder, but also Dr. Stein's testimony regarding Wright's

likelihood to reoffend, the violent nature of one of the sexual crimes, the attack of multiple victims in a short span of time, and Wright's predatory behavior exhibited by his sexual assault of strangers.

Finally, our review of the record has uncovered no non-frivolous issues Wright could raise on appeal. ***Dempster***, 187 A.3d at 272. We grant counsel's petition to withdraw and affirm Wright's judgment of sentence.

Petition to withdraw as counsel granted. Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2022